No. 47,942

STATE OF KANSAS, *Appellee,* v. JAMES B. SULLY, *Appellant.*

(547 P. 2d 344)

Opinion filed March 6, 1976.

*Jay H. Vader,* of Maurin, McCamish and Vader, of Kansas City, argued the cause and was on the brief for the appellant.

*Nick A. Tomasic,* district attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: Appellant James B. Sully was convicted by a jury of the offense of second degree murder. He was sentenced under the habitual criminal act and now appeals.

Appellant and a codefendant, John Wayne Hensley, were charged jointly with the first degree murder of one Jerome T. Halloran, and were tried together. Appellant does not challenge the sufficiency of the state's evidence, with the result the record on appeal is lacking in the facts of the homicide.

In their briefs the parties supply some of the particulars of the incident, none of which has been contradicted, so we have this background: Appellant and Hensley were drinking together during the day and the evening of April 17, 1974. At a Kansas City, Missouri, bar they met the victim, Halloran, who had just arrived from San Diego, California. Hensley conceived the idea that an underworld "contract was out" on his, Hensley's life, and Halloran was the "hit" man or the person hired to kill him. After drinking together the trio drove to the base of the Seventh street viaduct on the north bank of the Kansas river in Kansas City, Kansas, ostensibly

to urinate. There Hensley fired numerous shots into the head and body of the victim at close range, fatally wounding him. The shooting occurred at about 8:00 a. m. on April 18, 1974.

After the shooting appellant drove Hensley away from the scene and remained with him for several hours. Later that same day he contacted his brother who was a member of the Kansas City police department, and made a statement respecting the shooting. Eventually he was subpoenaed to testify for the state at the preliminary examination of Hensley, who was charged with Halloran's murder. After being advised of his constitutional rights to counsel and against self-incrimination he testified fully. As a result of his testimony, and that of other witnesses, appellant was then also charged with the murder.

Appellant's assertions of trial error will be dealt with chronologically. He says the trial court improperly tried him in a consolidated trial with his codefendant Hensley, over his objection. Each was represented by separate counsel. The two were charged jointly with the homicide and in its brief the state, without elaboration of the facts, says the evidence revealed that appellant was an active participant in the killing. Under the provisions of K. S. A. 22-3204, when two or more defendants are jointly charged with crime the court may order a separate trial for any one defendant when requested by such defendant or by the prosecuting attorney. The granting of separate trial lies within the sound discretion of the trial court. "Generally, an order for a separate trial of a defendant jointly charged with another must be based upon some ground sufficient to establish actual prejudice so as to require separate trials" (*State v. Cameron & Bentley,* 216 Kan. 644, 649, 533 P. 2d 1255). Although a single trial may be desirable from the standpoint of economical and efficient criminal procedure, the right of a defendant to a fair trial must be the overriding consideration (*Jung v. State,* 32 Wis. 2d 541, 145 N. W. 2d 684).

In *State v. Cameron & Bentley,* supra, we quoted this summarization of the usual grounds for severance:

". . . (1) that the defendants have antagonistic defenses; (2) that important evidence in favor of one of the defendants which would be admissible on a separate trial would not be allowed on a joint trial; (3) that evidence incompetent as to one defendant and introducible against another would work prejudicially to the former with the jury; (4) that a confession by one defendant, if introduced and proved, would be calculated to prejudice the jury against the others; and (5) that one of the defendants who could give evidence for the whole or some of the other defendants would become a competent and

compellable witness on the separate trials of such other defendants. . . ." (p. 649.)

Appellant alleges the first two grounds were applicable and established his right to separate trial. So far as we can glean from statements in the briefs appellant's defense was that he did not fire the fatal shots nor did he aid and abet Hensley in committing the crime; he was merely present; Hensley relied on the defense of intoxication to negate the specific intent required in murder. We cannot say appellant's defense was inconsistent with that of Hensley or that Hensley's defense was intrinsically antagonistic to appellant. A classic case where each of two defendants was trying to blame the other while trying at the same time to defend against the prosecution is not presented. Appellant points out adverse rulings made by the trial court in sustaining codefendant Hensley's objections to certain questions put by appellant's counsel to a witness, Nelson Pickens, on cross-examination. The record contains brief excerpts of this testimony together with the colloquy of counsel and the court's ruling. These passages do not reveal the import of the testimony sought. About all that is clearly shown is that all but one of the challenged questions put by appellant's cross-examination called for hearsay testimony, which would have been improper whether sought in a joint trial or in a trial in which appellant was the only defendant. Appellant has not shown how he was in anywise prejudiced in his failure to secure an answer to his remaining question. The record does not demonstrate a situation where evidence favorable to appellant would be admissible on his separate trial but not on joint trial nor does it show antagonistic defenses requiring separate trials.

Appellant contends the trial court erred in admitting three allegedly gruesome photographs of the deceased into evidence over his objection. One photo shows the victim's bloody face with one eye shot out and his left upper chest; one depicts the right side of the body and the right arm; the other is of the lower left part of the body. All depict bullet wounds of entrance or exit. Appellant offered to stipulate that the victim was shot to death. Under these circumstances he contends the photos had no evidentiary value and were offered only to inflame the minds and arouse the passions of the jury. A pathologist testified there were at least six bullets fired into the body.

We are told the defense tried to show that while deceased was standing up urinating, he was shot from the back or from the side,

either accidentally or unintentionally. The pathologist used the pictures to show the various paths of the bullets fired into the body, some of which were on a level plane from the front of the body while others took a downward path as though the deceased were falling to or lying upon the ground.

"This court has repeatedly held that the admission of photographs of a decedent, including photographs taken during an autopsy, is not error where the photographs are relevant to matters in issue, such as the fact and manner of death or to assist in understanding a pathologist's testimony" (*State v. Randol*, 212 Kan. 461, 466, 513 P. 2d 248). Photographs, if relevant and material to matters in issue, are not rendered inadmissible merely because they may be shocking or gruesome (*State v. Campbell*, 210 Kan. 265, 500 P. 2d 21). In the case at bar the pictures did not portray an autopsy and are not of the shocking and repetitive nature of those condemned in *State v. Boyd*, 216 Kan. 373, 532 P. 2d 1064. Their evidentiary value far outweighed any possible prejudicial effect and no error resulted from their admission.

Allied with the foregoing is appellant's assertion the trial court erred in refusing to give a precautionary instruction to the jury on the possible prejudicial effect of the photographs. The giving of such an instruction has been approved in several cases in other jurisdictions. We have no precise precedent on the subject. Our state committee on pattern jury instructions points out that a cautionary type instruction on consideration of the case without favoritism, sympathy or prejudice for or against a party is objectionable because it tells the jury what not to do rather than what to do and it recommends that none be given unless there are very unusual circumstances (PIK, Criminal, 51.07, p. 41). We think these views reflect the better practice as to precautionary instructions but hasten to add that the giving of such an instruction would not constitute error. In the light of our already stated evaluation of these photos no cautionary instruction was needed.

Appellant contends the trial court erred in failing to give to the jury one of three instructions requested by him on the subject of "aiding and abetting" or "participating" in the commission of a crime. He says since the prosecution's theory was that he aided and abetted Hensley in the murder, one of his instructions should have been given. We need not set out those he proposed. It is sufficient to say they dealt with the liability of one for the crimes of another. The trial court did give the following instruction on the issue:

"A person is responsible for the conduct of another when, either before or during the commission of a crime, and with the intent to promote or assist in the commission of the crime he intentionally aids or advises the other to commit the crime."

This instruction is taken from PIK Criminal, 54.05, p. 79, and is substantially in the language of K. S. A. 21-3205 (1), defining liability for crimes of another. Error cannot be predicated on a trial court's refusal to give specific instructions where those which were given cover and include the substance of those refused (*State v. Einhorn*, 213 Kan. 271, 275, 515 P. 2d 1036). The subject of aiding and abetting was adequately covered and the court did not err in failing to use one or more of those proposed by appellant.

As a part of its instructions the court gave a definition of the term "reasonable doubt", which appellant now contends constituted prejudicial error. No objection to the instruction was raised at trial. Objection to an instruction will not be considered when raised for the first time on appeal unless the instruction is clearly erroneous (*State v. Collins*, 217 Kan. 418, 536 P. 2d 1382). The one given was the traditional one and does not fall in the erroneous category. Beyond this, although an instruction on reasonable doubt is unnecessary, a conviction will not be reversed merely because one was given (*State v. Winston*, 214 Kan. 525, 530, 520 P. 2d 1204).

Appellant next complains the trial court erred in giving, over his objection, an instruction on second degree murder, the offense for which he was convicted. He says in his brief there was no evidence at trial to support the giving of such an instruction. The difficulty with this position is that the record on appeal is silent as to events under the viaduct when the victim was killed (appellant has not chosen to avail himself of that part of our rule 6 (*e*) [214 Kan. xxiii], which permits a party to state in his designation of record that no evidence was introduced to show a certain fact). The state has responded in its brief that appellant testified the homicide occurred, not with premeditation or deliberation, but more or less spontaneously. Upon this state of the record we cannot say the trial court erred in giving the challenged instruction. "Second-degree murder is clearly a lesser included offense under first-degree murder since all of the elements of second-degree murder are included in the elements required to establish murder in the first degree" (*State v. Carpenter*, 215 Kan. 573, 579, 527 P. 2d 1333).

Appellant asserts error in the court's failure to answer a question

posed by the jury. After the jury had retired to deliberate the jury foreman addressed a written question to the trial judge, referring to the court's instruction on aiding and abetting, and asking: "When does the commission of this particular crime stop?" The judge's written answer, after conferring with counsel, was that he could not add to or further explain the written instructions. Appellant's counsel stated he believed "the proposed answer should read that the crime has ended with the commission of the crime". He further indicated he believed "the crime has ended in this case underneath the 7th street bridge". As already indicated, evidently appellant drove Hensley away from the scene and remained with him for several hours before reporting the incident to the police; apparently his explanation for not leaving Hensley sooner was he was afraid to do so. Appellant argues that without further instructions improper inferences might have been drawn by the jury from this conduct. Under K. S. A. 22-3420 (3) jurors may, after they have retired for deliberation, request further information as to the law or evidence in the case, but such requests are generally addressed to the trial court's discretion (ABA Standards Relating To Trial by Jury [Approved Draft, 1968], § 5.3). This rule has been applied in Kansas (see *State v. Wilson,* 169 Kan. 659, 220 P. 2d 121).

Appellant was not charged under K. S. A. 21-3812 with aiding or concealing a felon or a person charged as a felon, which is conduct after a crime has been committed by another, and constitutes a separate and distinct crime from that of aiding and abetting another in the commission of crime (*State v. Townsend,* 201 Kan. 122, 439 P. 2d 70). The state has pointed out there was evidence received at trial of appellant's active participation in the killing. Among other things, apparently there was testimony by distant eyewitnesses as to events under the bridge. Merely driving another away from a murder scene does not aid that person in committing the homicide. The court did define the liability of one person for the crimes of another in clear language which made no mention of conduct after the killing. In *State v. Williams & Reynolds,* 217 Kan. 400, 536 P. 2d 1395, we summed it up:

"A person is responsible for the conduct of another when, *either before or during the commission of a crime,* and with the intent to promote or assist in the commission of the crime, he intentionally aids or advises the other to commit the crime. All participants in a crime are equally guilty, without regard to the extent of their participation." (Syl. ¶ 6.) (Emphasis supplied.)

We cannot say the court's failure to answer the jury's question amounted to an abuse of discretion.

Appellant further contends the trial court erred in approving inconsistent verdicts—one which convicted Hensley of first degree murder while the other convicted appellant of second degree murder—when the two were charged and tried jointly. The argument is that if the jury believed the prosecution's theory he should have been convicted of first degree murder; otherwise he should have been acquitted altogether. We think not. Jurors in a criminal case are not required to specify reasons for a particular verdict reached by them. The state points out there was some conflict in the evidence. Conceivably this may have supplied some reason for differentiation in verdicts, but aside from this "it has been firmly established by this court, as well as most other jurisdictions, that consistency of the verdict [in a joint trial] is not necessary" (*State v. Rogers*, 217 Kan. 462, 468, 537 P. 2d 222). The modern rule appears to be that verdicts as between two or more defendants tried together need not demonstrate rational consistency (see Anno., Criminal Law—Inconsistent Verdicts, 22 ALR 3d 717, 721). "The rendering of inconsistent verdicts has always been an exclusive privilege and prerogative of the jury, and it is not our duty to unravel the ratiocinations of the jury's collective logic" (*Odom v. United States*, 377 F. 2d 853, 857, 22 ALR 3d 705, 711-712). In *State v. Carpenter*, supra, we commented:

". . . It is not an uncommon thing for a jury, out of sympathy, or what they conceive to be extenuating circumstances, to find a defendant guilty of a lower degree or grade of offense than that of which the evidence clearly convicts him. The fact that they do so is not grounds for a reversal of the verdict and the judgment entered thereon". (pp. 581-582.)

See also *State v. McCorgary*, 218 Kan. 358, 543 P. 2d 952.

Finally, appellant contends he was discriminated against by reason of being sentenced to a term of not less than thirty years and a maximum of life under the habitual criminal act. Pretrial notice of intention to invoke the provisions of the act was given to both appellant and Hensley. No other convictions were ever offered as to Hensley prior to his sentencing and he was sentenced to a term of life imprisonment for committing murder in the first degree. Three previous convictions of appellant were shown—a second degree burglary conviction in 1959 and convictions for second degree burglary and larceny in 1964—and an enhanced sentence resulted. Because appellant aided the police in prosecuting Hensley and because his convictions were ten and fifteen years old, he asserts unjust discrimination.

At a time when application of the habitual criminal act was mandatory upon the sentencing judge once a previous conviction was shown by the prosecution (K. S. A. 21-107a) we held that the exercise of discretion by a prosecuting attorney in seeking to invoke the provisions of the act, absent a showing of wilful, designed or deliberate discrimination, was not a violation of the due process or equal protection provisions of the federal constitution (*State v. Troy,* 215 Kan. 369, 524 P. 2d 1121). "The good faith of the county attorney is a material issue bearing upon his motives when invoking the Habitual Criminal Act, since the exercise of discretion in the performance of his duties implies conscientious judgment rather than arbitrary action, and takes account of the law and particular circumstances of each case . . ." (*Addington v. State,* 198 Kan. 228, Syl. ¶ 4, 424 P. 2d 871).

Our present statute on the subject, K. S. A. 21-4504, admits of the same discretion in the prosecuting attorney in presenting evidence of other felony convictions and moving for an enhanced sentence; however, the imposition of increased punishment for recidivists is no longer mandatory upon the trial court but lies within its discretion. It *may* increase sentence, within prescribed limits, upon a showing of conviction of second or more felonies but is not required to do so as before. This function should be subject to the same principles applicable to the prosecuting attorney in invoking the recidivist statute, and we so hold.

Appellant here points to no facts or circumstances which would justify a finding that the prosecution or the trial court acted in bad faith in the sentencing process and we are aware of none. It may be said that the policy of the act had already been fulfilled in Hensley's case since a life sentence was mandatory without application of the act. Further the remoteness of appellant's prior convictions did not render his sentence suspect. In *Baker v. State,* 213 Kan. 874, 518 P. 2d 537, we sanctioned use of a thirty-two year old conviction to enhance a sentence. Abuse of discretion does not appear.

Judgment affirmed.

APPROVED BY THE COURT.