No. 48,047

STATE OF KANSAS, *Appellee*, v. JOHN WAYNE HENSLEY, *Appellant*.

(549 P. 2d 874)

Opinion filed May 8, 1976.

*Robert W. Feiring*, of Kansas City, argued the cause and was on the brief for the appellant.

*Nick A. Tomasic*, district attorney, argued the cause, and *Curt T. Schneider*, attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: John Wayne Hensley appeals from his conviction of murder in the first degree in violation of K. S. A. 21-3401. A codefendant, James B. Sully, was charged and tried jointly. Sully was convicted of murder in the second degree. He appealed, and we affirmed. *State v. Sully*, 219 Kan. 222, 547 P. 2d 344.

Hensley contends that the trial court erred in consolidating for trial the charges against Hensley and Sully; and he contends that the court erred in admitting into evidence photographs of the victim's body. Sully advanced both contentions. With reference to the photographs, we concluded that they were relevant; that they were not of the shocking and repetitious nature of those condemned in *State v. Boyd*, 216 Kan. 373, 532 P. 2d 1064; and that no error resulted from their admission. We adhere to those conclusions.

Hensley's most serious contention is that the court erred in denying his motion for a separate trial. Before considering this point

we turn first to the factual background, disclosed from the record.

Hensley and Sully were drinking together in the Kansas City area on the afternoon and evening of April 17, 1974. The two men went from bar to bar, transportation being provided by Sully. During the early morning hours, Hensley attempted to get his shotgun from a friend, but the friend refused to give it to him. Hensley and Sully then proceeded with their drinking. About 6 a.m. on April 18, 1974, in the Hollywood Bar in Kansas City, Missouri, the pair encountered the victim, Jerome T. Halloran. Hensley expressed the opinion to Sully that Halloran was a hired killer, and had a contract to kill Hensley. Hensley determined to dispose of Halloran. Hensley first borrowed a gun from the barmaid, then made contact with someone for another weapon. Upon its delivery at the bar, Hensley returned the gun provided him by the barmaid. Hensley, Sully and Halloran then left and proceeded by automobile to Kansas City, Kansas. They stopped under the Seventh Street bridge on the north side of the Kansas River, ostensibly to urinate.

During the rest stop, Hensley shot Halloran five or six times. The hour was about 8 o'clock a.m. The shooting took place in full view of residents of the area who were called as witnesses at the trial. Immediately following the shooting Hensley and Sully left in Sully's car and resumed their drinking bout. Sometime after noon Sully separated from Hensley. Sully then called his brother, a Kansas City, Kansas police officer, and reported the shooting to him. Soon thereafter Hensley was arrested while asleep in Sully's car.

Initially Hensley was the sole defendant in this case. A preliminary hearing was held in the Wyandotte County Magistrate Court on May 7, 1974. Sully testified for the state, after being fully advised of his rights. Hensley was represented by his present able counsel who fully cross-examined Sully. Hensley was bound over to the district court for trial. Shortly thereafter Sully was charged with murder in the first degree and upon his appearance in the district court, the state moved to consolidate the cases of both men for trial. This motion was granted over objections of both defendants.

At the trial, the state called Sully as a witness for the prosecution, to testify against Hensley. Sully invoked his fifth amendment right and refused to testify. The state then introduced, over objection, the testimony given by Sully at Hensley's preliminary

examination including the lengthy cross-examination of Sully by Hensley's counsel.

Hensley and Sully each testified in his own behalf at the trial. Sully was again fully cross-examined by counsel for Hensley. Sully's defense was that he took no part in the killing; that he was simply a spectator. Hensley defended upon the claim that he was so intoxicated that he did not recall and was not responsible for events which occurred on April 18, 1974.

In *State v. Sully,* supra, we examined the same joinder question and we quoted extensively from *State v. Cameron & Bentley,* 216 Kan. 644, 533 P. 2d 1255. In the latter case we said:

"Under the provisions of K. S. A. 22-3204 the granting of separate trials . . . is discretionary with the court. (*State v. Sullivan & Smith,* 210 Kan. 842, 504 P. 2d 190.)

"Generally, an order for a separate trial of a defendant jointly charged with another must be based upon some ground sufficient to establish actual prejudice so as to require separate trials. In this connection the usual grounds are enumerated in 75 Am. Jur. 2d, Trial, § 20:

" 'The usual grounds for a severance are: (1) that the defendants have antagonistic defenses; (2) that important evidence in favor of one of the defendants which would be admissible on a separate trial would not be allowed on a joint trial; (3) that evidence incompetent as to one defendant and introducible against another would work prejudicially to the former with the jury; (4) that a confession by one defendant, if introduced and proved, would be calculated to prejudice the jury against the others; and (5) that one of the defendants who could give evidence for the whole or some of the other defendants would become a competent and compellable witness on the separate trials of such other defendants. . . .' (p. 135.)" (p. 649.)

Sully argued that the first two grounds of severance were applicable. As to the first ground we then held and we now hold that the defenses were not inconsistent nor were they intrinsically antagonistic. The facts relied upon by Sully to raise an issue under the second ground related to the testimony of a witness, Nelson Pickins, which was apparently applicable only to Sully. That issue was determined adversely to Sully, and is not raised here.

Hensley argues that the fourth ground for severance is applicable. He argued in the trial court and argues here that the joinder violates the rule of *Bruton v. United States,* 391 U. S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, in that Sully had previously given a written confession incriminating Hensley. In *Bruton,* the oral confession of a codefendant, Evans, was received in evidence. Evans did not take the stand. The trial court instructed the jury

that although Evans' confession was competent evidence against Evans, it was inadmissible hearsay against Bruton and had to be disregarded in determining his guilt or innocence. The United States Supreme Court reversed, holding that the procedure violated Bruton's sixth amendment right of confrontation and cross-examination.

We have no such problem here. There is no indication that Sully's statement was introduced by the state in its case in chief. Sully testified in court at the preliminary hearing, in the presence of Hensley and his attorney, and Sully was cross-examined extensively. Further, Sully took the stand in his own defense and was again cross-examined by Hensley's attorney during the joint trial. Hensley does not contend that his right of cross-examination was restricted or limited in any way upon either occasion. Appellant was not denied his right to confrontation and cross-examination.

The evil sought to be eliminated in *Bruton* was the deprivation of a defendant's constitutional right of cross-examination secured by the confrontation clause of the sixth amendment upon the admission into evidence of the confession of a non-testifying codefendant. Where the confessing codefendant testifies, the right to confrontation and cross-examination is fully preserved. *Roberts v. United States*, 416 F. 2d 1216 (5th Cir., 1969); *United States v. Harris*, 409 F. 2d 77 (4th Cir., 1969); and see Anno., Severance of Prosecution, 54 A. L. R. 2d 830, 863.

Appellant argues that the record of Sully's testimony at the preliminary examination could not possibly give to the jury an opportunity to assess the witness. This argument ignores the fact that Sully took the stand during the trial and thus was subject to observation by the jury.

Hensley further argues that Sully was not unavailable as a witness and that therefore no foundation was laid for the receipt of his testimony at the preliminary examination. He suggests that if Sully had been tried first and if Sully had been convicted, then Sully would not have had any fifth amendment right if called as a witness against Hensley in a later trial. Defendant cites *Barber v. Page*, 390 U. S. 719, 20 L. Ed. 2d 255, 88 S. Ct. 1318, wherein the court refused to permit the state to use the transcript of a witness from defendant's preliminary hearing in lieu of the witness' live testimony at trial. *Barber*, however, must be limited to its particular facts. The witness in *Barber* was a prisoner in another

part of the state, and the state took no measures to insure his appearance but simply elected to use the transcript of his earlier testimony. As the Tenth Circuit stated in *United States v. Allen,* 409 F. 2d 611 (1969):

". . . [W]e read that opinion [*Barber*] as deciding only that the transcript was improperly received because unavailability [of the witness] had not been established." (p. 613.)

We have previously held that the testimony of a witness who claims his privilege against self-incrimination is just as unavailable as the testimony of one whose physical presence cannot be procured. *State v. Oliphant,* 210 Kan. 451, 454, 502 P. 2d 626; *State v. Terry,* 202 Kan. 599, 451 P. 2d 211. The initial unavailability of the testimony of the witness here distinguishes this case from *Barber* and laid a proper foundation for the receipt of the testimony given at the preliminary examination. The important element is whether the *testimony* of the witness is sought and is available, and not whether the witness' *body is* available. *Mason v. United States,* 408 F. 2d 903 (10th Cir., 1969.)

Whether Sully would have been convicted, had he been tried separately and prior to Hensley, and whether he would have again asserted his fifth amendment right if thereafter he was called as a witness against Hensley in a separate trial are matters on which we need not speculate.

We have reviewed the entire record and conclude that the trial court did not err in consolidating the first degree murder charges against appellant and Sully for trial or in admitting the transcript of Sully's preliminary hearing testimony under the circumstances here disclosed.

The judgment is affirmed.