No. 69,839

CITY OF WICHITA, KANSAS, a Municipal Corporation, *Appellant,*
v. JAMES LUCERO, *Appellee.*

(874 P.2d 1144)

Opinion filed
May 27, 1994.

*Sharon L. Chalker,* assistant city attorney, argued the cause, and *Gary E. Rebenstorf,* city attorney, was with her on the briefs for appellant.

*Alice L. Knetsch,* of Law Offices of S.A. (Tim) Scimeca, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

HOLMES, C.J.: This is an appeal by the City of Wichita (City) from the district court's ruling that the mandatory minimum fine provision for repeat offenders, as set forth in § 5.66.055(b) of the Code of the City of Wichita, is unconstitutional. This appeal is taken upon a question reserved by the City pursuant to K.S.A. 1993 Supp. 22-3602(b)(3).

The facts are not in dispute. James Lucero was arrested on December 2, 1992, for violating § 5.66.055(a)(1) of the Code of the City of Wichita. The ordinance makes it unlawful for any person to intentionally interfere with or obstruct the conduct of a lawful business. The defendant was arrested while participating in a pro-life demonstration at a women's clinic located in Wichita.

On February 18, 1993, the defendant appeared pro se before the Wichita Municipal Court and was found guilty of violating § 5.66.055(a)(1). He was ordered to pay the mandatory minimum fine of $250, serve six months in jail, and pay court costs. On February 25, 1993, the defendant appealed his conviction to the Sedgwick County District Court. On April 19, 1993, the defendant, who again appeared pro se, was found guilty in a jury trial of violating the ordinance.

On April 20, 1993, the defendant was sentenced by the district court. During sentencing, Assistant City Attorney Sharon Chalker informed the court of the defendant's prior conviction under the same ordinance. The City recommended that the defendant be fined the mandatory minimum fine of $250 and be placed on six months' probation with credit for time served. The City further recommended that the defendant be required to perform community service in lieu of paying the fine if the court found the defendant indigent. The court examined the defendant as to his assets, employment, and possible indigency. The defendant denied having any assets or employment. The court then proceeded to sentence the defendant, stating:

"Here's the sentence: the jury has found you guilty and I've accepted their verdict. I'll enter the same as a judgment finding you guilty of having violated the City's ordinance numbered 5.66.055(1).

"I will impose a sentence of 90 days in the Sedgwick County Adult Detention Facility and a fine of $250 and I'll find that you are indigent as that term is used in the Kansas Code of Criminal Procedure and to follow the dictates of the City's ordinance would be violative of due process of law as set out in [Sections] 1 and 2 of the Kansas Constitution [Bill of Rights] and applicable U.S. Constitution provisions.

"You are, therefore, paroled outright on time served."

The journal entry signed by the trial judge provides in pertinent part:

"THEREUPON, a jury having been duly impaneled, having heard the statements of Plaintiff's counsel and the Defendant, the evidence presented, instructions of the Court and having duly deliberated, returned their verdict, finding the Defendant guilty of Interference with a Lawful Business contrary to Section 5.66.055 of the Code of the City of Wichita.

"THEREUPON, the Court having received and accepted the verdict of the jury does proceed to sentence the Defendant on the 20th day of April, 1993.

"THEREUPON, the Court, after inquiring of the defendant of his financial status, determines that he is indigent within the meaning of the Kansas Criminal Code.

"IT IS FURTHER ORDERED that the mandatory fine imposed in the City of Wichita's Ordinance Section 5.66.055(b)(2) is unconstitutional in violation of the defendant's constitutional rights as enumerated in Sections 1 and 2 of the Bill of Rights of the Kansas Constitution.

"IT IS THE SENTENCE OF THE COURT AND IT IS HEREBY ORDERED AND ADJUDGED that the defendant be imprisoned for a period of 90 days in the Sedgwick County Detention Facility.

"IT IS FURTHER ORDERED that the defendant receive credit for time served and is to be paroled outright.

"IT IS SO ORDERED."

The City appealed and states the question on appeal as follows:

"Did the District Court err in holding that the mandatory fines, as set forth in Section 5.66.055(b) of the Code of the City of Wichita, violated the defendant's constitutional rights as set forth in Sections 1 and 2 of the Bill of Rights of the Kansas Constitution?

The Code of the City of Wichita § 5.66.055, entitled "Interference with the conduct of a lawful business," provides:

"(a) Interference with the conduct of a lawful business is:

"(1) Intentional conduct at or in any building owned, operated or controlled by a private individual or corporation that causes an obstruction to or interference with the free and uninterrupted use of such property as a lawful business by any employee, patron, patient or other invitee on such premises, or which

prevents the free and uninterrupted ingress, egress or regress therein, thereon or thereto;

"(2) Wilfully or intentionally refusing or failing to leave any such building owned, operated or controlled by a private individual or corporation upon being requested to do so by the owner thereof, any law enforcement officer or other authorized individual.

"(b) Any person who violates any of the provisions of this chapter within the corporate limits of the city shall be deemed guilty of a misdemeanor and upon conviction hereof shall be punished by the following fines:

"(1) Upon a first conviction, not more than two thousand five hundred dollars;

"(2) Upon a second conviction, not less than two hundred fifty dollars nor more than two thousand five hundred dollars;

"(3) Upon a third conviction, not less than five hundred dollars nor more than two thousand five hundred dollars;

"(4) Upon a fourth conviction, not less than seven hundred fifty dollars nor more than two thousand five hundred dollars;

"(5) Upon a fifth conviction, not less than one thousand dollars nor more than two thousand five hundred dollars;

"(6) Upon a sixth conviction, not less than one thousand two hundred fifty dollars nor more than two thousand five hundred dollars;

"(7) Upon a seventh conviction, not less than one thousand five hundred dollars nor more than two thousand five hundred dollars;

"(8) Upon a eighth conviction, not less than one thousand seven hundred fifty dollars nor more than two thousand five hundred dollars;

"(9) Upon a ninth conviction, not less than two thousand dollars nor more than two thousand five hundred dollars;

"(10) Upon a tenth conviction, not less than two thousand two hundred fifty dollars nor more than two thousand five hundred dollars;

"(11) And upon an eleventh or subsequent conviction, not less than two thousand five hundred dollars.

"In addition to the preceding fines such person may be punished by a term of imprisonment which shall not exceed six months, or by both such fines and imprisonment.

"(c) The imposition of the fines established in subparagraphs (b)(2) through (11) herein shall be mandatory and the court shall not waive, remit, suspend, parole or otherwise excuse the payment thereof except that the court may order that the defendant perform community service specified by the court but such an order shall be entered only after the court has required the defendant to file an affidavit of such defendant's financial condition as required by Section 1.04.210(e) and amendments thereto, and the court has found from the information contained in the affidavit that the defendant is financially unable to pay the fines imposed herein.

"(d) For the purposes of determining whether a conviction is a first or subsequent conviction in sentencing under this section, conviction includes being

convicted of a violation of this section, and it is irrelevant whether an offense occurred before or after conviction for a previous offense."

During sentencing, the court was advised that the defendant had one prior conviction under the same ordinance and therefore was subject to a mandatory minimum fine of not less than $250 under § 5.66.055(b)(2) of the ordinance. Based upon its determination that the defendant was indigent, the court paroled the defendant outright rather than sentencing the defendant to perform community service in lieu of the fine as authorized for indigent defendants under § 5.66.055(c).

We now turn to the question reserved for appeal. In doing so, we are somewhat handicapped in that the trial judge made his apparent determination that to require this defendant to pay the mandatory fine would violate his constitutional rights *sua sponte* without meaningful explanation of the ruling. The issue of the constitutionality of § 5.66.055 was not raised by either party in the trial court. The trial judge made his ruling without any notice to or argument from counsel for the parties. In addition, the trial judge failed to provide any legal reasoning in support of his ruling and failed to explain or clarify just what he considered unconstitutional about the ordinance. As a result, this court, along with counsel, is left to speculate as to the basis for and rationale behind the court's ruling.

Counsel for the State argues (1) that there is nothing unconstitutional about mandatory sentences, including fines, or mandatory increased penalties for habitual offenders and (2) that the court had discretion under § 5.66.055(c) to sentence the defendant to perform community service in lieu of the mandatory fine. Counsel for the defendant argues primarily that the trial court was correct because § 5.66.055(a) is unconstitutionally vague, thereby violating defendant's due process rights, and in addition that the ordinance is subject to arbitrary and discriminatory enforcement and violates the First Amendment right of free speech.

At the outset, it is deemed appropriate to set forth certain basic principles applicable to our consideration of this appeal. As to our standard of review, we are being asked to interpret the constitutionality of § 5.66.055 of the Code of the City of Wichita. In-

terpretation of an ordinance is a question of law. See *Todd v. Kelly*, 251 Kan. 512, 515, 837 P.2d 381 (1992). "When determining a question of law, this court is not bound by the decision of the district court." *Memorial Hospital Ass'n Inc. v. Knutson*, 239 Kan. 663, 668, 722 P.2d 1093 (1986).

The general principles and guidelines to be followed in considering the constitutionality of a statute or ordinance have been enumerated many times. In *Moody v. Board of Shawnee County Comm'rs*, 237 Kan. 67, 697 P.2d 1310 (1985), we stated:

"The constitutionality of a statute is presumed. All doubts must be resolved in favor of its validity, and before the act may be stricken down it must clearly appear that the statute violates the constitution. In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it. If there is any reasonable way to construe the statute as constitutionally valid, that should be done. A statute should not be stricken down unless the infringement of the superior law is clear beyond substantial doubt. The propriety, wisdom, necessity and expediency of legislation are exclusively matters for legislative determination. Courts will not invalidate laws, otherwise constitutional, because the members of the court do not consider the statute to be in the public interest; what the views of the members of the court may be upon the subject [are] wholly immaterial. It is not the province nor the right of courts to determine the wisdom of legislation touching the public interest, as that is a legislative function with which courts cannot interfere." 237 Kan. at 74.

The first argument asserted by the City is based upon the assumption that the trial court may have concluded that the imposition of a harsher penalty for repeat offenders was unconstitutional. While it appears to us that the trial court's decision was based primarily on the defendant's status as indigent, we have no way of being absolutely certain why the judge ruled as he did. Under the circumstances, we will consider both of the arguments and alternatives advanced by the City.

The ordinance now before the court is a self-contained mandatory habitual offender ordinance. The ordinance provides for graduated minimum fines which progress from $250 for a second conviction to $2,500 for an eleventh and all subsequent convictions. In addition, the imposition of the fine is not only mandatory, but subsection (c) provides "the court shall not waive, remit, suspend, parole or otherwise excuse the payment" of the minimum fine. However, the ordinance does provide that the court may

order performance of community service in lieu of the fine if the defendant is determined to be indigent and financially unable to pay the fine. The court apparently rejected the community service option and presumably concluded that the mere imposition of harsher penalties for repeat offenders was unconstitutional. In doing so the court stated the ordinance violated "due process of law as set out in [Sections] 1 and 2 of the Kansas Constitution [Bill of Rights]."

While this case affords this court the first opportunity to examine a self-contained habitual offender *city ordinance,* similar type statutes have been previously examined and found constitutional. Self-contained habitual offender statutes and city ordinances create a special legal category for repeat or habitual offenders. Generally, habitual offender statutes impose a harsher penalty against those individuals with repeat criminal offenses. Like the instant city ordinance under review, habitual offender statutes increase the severity of the penalty in proportion with the number of convictions an individual has for commission of similar criminal acts. This type of legal category or status has long been recognized by this court as a legitimate basis for the imposition of tougher penalties. In *State v. Adams,* 89 Kan. 674, 677, 132 Pac. 171 (1913), this court held: "Former conviction of crime is a sufficient basis for the classification of offenders with respect to the severity of the punishment they shall receive."

In *State v. Woodman,* 127 Kan. 166, 171, 272 Pac. 132 (1928), this court noted: "[I]t is a salutary provision of law that criminals whom the law's discipline has hitherto failed to reform by prior conviction and punishment should form a class to be more severely punished than first offenders." And, in *State v. Lohrbach,* 217 Kan. 588, 591, 538 P.2d 678 (1975), the court described the purpose and philosophy behind recidivist or habitual offender statutes:

"The basic philosophy underlying recidivist statutes might be expressed in this fashion: where the punishment imposed against an offender for violating the law has failed to deter him from further infractions, a harsher and more severe penalty is justified, the idea being, hopefully, that the greater punishment may serve as an object lesson and cause him to accomplish his reformation, where the lesser penalty had failed in that respect."

This court on numerous occasions has examined and upheld the constitutionality of self-contained habitual offender statutes. In *State v. Miles,* 233 Kan. 286, 662 P.2d 1227 (1983), the defendant was convicted for possession of both marijuana and heroin, in violation of the Kansas Uniform Controlled Substances Act. Pursuant to K.S.A. 65-4127a (Ensley 1980), the defendant's heroin conviction was elevated from a class C to a class B felony due to a prior heroin conviction. The defendant maintained that the enhancement was improper, arguing that his prior conviction in the state of Iowa was not in violation of Kansas law, and thus not a prior conviction as set forth in 65-4127a. In rejecting the defendant's flawed interpretation of the statute, the court again recognized the validity of imposing harsher penalties for repeat offenders:

"The propriety of inflicting severer punishment on second or subsequent offenders has been long recognized in this state. The offenders are not punished the second time for the earlier offense, but the repetition of criminal conduct aggravates their guilt and justifies increased penalties when they are convicted. The Kansas Supreme Court has recognized the validity of a habitual criminal act, *State v. Collins,* 215 Kan. 798, 528 P.2d 1221 (1974); that such an act does not violate due process or equal protection, *State v. Sully,* 219 Kan. 222, 547 P.2d 344 (1976); and is constitutional, *State v. Levier,* 226 Kan. 461, 601 P.2d 1116 (1979). Prior convictions can be limited to those which were committed in the sentencing state or may include prior convictions of other jurisdictions." 233 Kan. at 298.

In *State v. Salyer,* 196 Kan. 32, 410 P.2d 248 (1966), the court examined a statute which elevated a misdemeanor offense to a felony based upon prior convictions. The court stated:

"The validity of a statute which authorizes an enhanced penalty by reason of prior convictions has long been recognized. The theory is not repugnant to or in violation of the due process clause of the United States Constitution. (See, *Graham v. West Virginia,* 224 U.S. 616, 56 L. Ed. 917, 32 S. Ct. 583; and 25 Am. Jur., Habitual Criminals, § 3, p. 261, *et seq.*) A similar statute is K.S.A. 21-107a, commonly known as the habitual criminal statute. The validity of 21-107a has been upheld in many of our decisions. (*Browning v. Hand,* 184 Kan. 365, 336 P.2d 409, *cert. den.* 361 U.S. 926, 4 L. Ed. 2d 240, 80 S. Ct. 295; *State v. Messmore,* 175 Kan. 354, 264 P.2d 911; and *Scott v. Hudspeth,* 171 Kan. 320, 232 P.2d 464." 196 Kan. at 36.

In the present case, if the trial court's ruling was based upon the increased nature of the penalty for subsequent violations of

the ordinance, its determination was clearly erroneous. The ordinance does not violate the Equal Protection and Due Process Clauses of the Kansas Constitution Bill of Rights or the United States Constitution for such reason.

We now turn to what we perceive as the more probable basis for the trial court's decision. From the language used by the judge, it appears that he was concerned about the constitutionality of an ordinance (or statute) that would inflict a mandatory fine upon an indigent defendant who had no apparent means of paying the fine. The trial court not only accepted the jury's verdict of guilty but also imposed a sentence of 90 days and a fine of $250 as specified in the statute. This leads us to the conclusion that the court's concern was with the indigent status of the defendant rather than the mandatory increases in the minimum fine for repeat offenders.

Is an ordinance which requires the imposition of a mandatory minimum fine or community service in lieu thereof, against an indigent defendant, in violation of the Kansas Constitution? We hold that it is not.

While this issue has never been reviewed directly by the Kansas appellate courts, there are at least three United States Supreme Court decisions which provide guidance on the question.

In *Bearden v. Georgia,* 461 U.S. 660, 76 L. Ed. 2d 221, 103 S. Ct. 2064 (1983), the Court considered the question of whether the 14th Amendment prohibited a state from revoking an indigent defendant's probation for failure to pay a fine. The trial court sentenced the defendant to three years' probation after a plea of guilty to a burglary charge. As a condition to the defendant's probation, the trial court ordered the defendant to pay both a $500 fine and $250 in restitution. When the defendant was unable to pay the restitution and fine, the trial court revoked the defendant's probation and sentenced him to serve the remaining period of the probationary period in prison.

In concluding that the trial court erred in automatically revoking the defendant's probation, the Court held:

"We hold, therefore, that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure

to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternative measures of punishment other than imprisonment. *Only if alternative measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay.* To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment." (Emphasis added.) 461 U.S. at 672-73.

In *Tate v. Short,* 401 U.S. 395, 28 L. Ed. 2d 130, 91 S. Ct. 668 (1971), the defendant was fined $425 and, because he was unable to pay the fine due to his indigency, was committed to prison on the basis of a state statute. In essence, the statute converted a fine into a prison sentence based solely on defendant's indigency status. In holding that the statute was a violation of the Equal Protection Clause, the court stated: " '[T]he Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full.' " 401 U.S. at 398. The Court went on to state, however, "that our holding today does not suggest any constitutional infirmity in imprisonment of a defendant with the means to pay a fine who refused or neglects to do so." 401 U.S. at 400.

One year preceding the *Tate* decision, the Supreme Court examined the issue of whether an indigent defendant could be held in confinement longer than the maximum term allowed by statute for failure to pay the fine imposed during sentencing. In *Williams v. Illinois,* 399 U.S. 235, 26 L. Ed. 2d 586, 90 S. Ct. 2018 (1970), the defendant was sentenced to the maximum term of one year in jail and fined $500 and $5 court costs for petty theft. The issue under review involved examination of a state statute which permitted the continued confinement of the defendant beyond the maximum term allowed by statute for failure to pay the fine. The statute allowed the defendant to "work off" the fine at a rate of $5 per day, thereby having the potential of increasing the de-

fendant's imprisonment by 101 days beyond the maximum period allowed by statute.

In ruling that the state statute violated the Equal Protection Clause, the Court held:

"We conclude that when the aggregate imprisonment exceeds the maximum period fixed by the statute and results directly from an involuntary nonpayment of a fine or court costs we are confronted with an impermissible discrimination that rests in ability to pay. . . .

. . . .

"A State has wide latitude in fixing the punishment for state crimes. . . . However, once the State has defined the outer limits of incarceration necessary to satisfy its penological interests and policies, it may not then subject a certain class of convicted defendants to a period of imprisonment beyond the statutory maximum solely by reason of their indigency." 399 U.S. at 240-42.

Finally, and pertinent to our question under review, the Court stated:

"The State is not powerless to enforce judgments against those financially unable to pay a fine; indeed, a different result would amount to inverse discrimination since it would enable an indigent to avoid both the fine and imprisonment for nonpayment whereas other defendants must always suffer one or the other conviction." 399 U.S. at 244.

Although the foregoing cases do not directly answer the issue before this court, they do address substantive questions which directly affect our decision here. First, the United States Supreme Court has held that imposition of a fine against an indigent defendant is allowable and that to deny the State authority to enforce such judgments would be violative of the Equal Protection Clause. "[N]othing we now hold precludes a judge from imposing on an indigent, as on any defendant, the maximum penalty prescribed by law." *Williams*, 399 U.S. at 243. And, secondly, the Court has held that before a court may revoke a defendant's probation for failure to pay a fine, the court must inquire into and determine whether the defendant made a "sufficient bona fide" effort to pay the fine. However, even in the instance where an indigent defendant has made sufficient bona fide efforts to pay a fine, "if alternative measures are not adequate to meet the State's interest in punishment and deterrence," the court may

imprison an indigent probationer who has failed (due to no fault of his or her own) to pay a fine. *Bearden,* 461 U.S. at 672.

Although this court has not examined a case which deals directly with the rule of law stated in *Bearden,* we have recognized the impact of *Bearden's* ruling. In *State v. Higgins,* 240 Kan. 756, 732 P.2d 760 (1987), the court was faced with a dispute over the right of the trial court to parole a defendant from the payment of extradition costs assessed as court costs. The court relied upon *Bearden* in observing:

"In recent years, the courts in this country have taken a rather firm position holding that it is constitutionally impermissible to incarcerate an indigent criminal defendant merely because he does not have the money to pay the fine or make restitution as a condition of his probation." 240 Kan. at 759.

In *State v. Duke,* 10 Kan. App. 2d 392, 699 P.2d 576 (1985), the defendant appealed from an order of the trial court which revoked his probation for failure to pay fines and make restitution, which were conditions of his probation. After discussing *Bearden,* the court stated:

"The clear message in *Bearden* is that when determining whether to revoke probation, the trial court must consider why a probationer failed to pay a fine or court costs or make restitution as required by the conditions of probation. *Automatic* revocation and imprisonment of the probationer is prohibited by the Fourteenth Amendment. As set forth in *Bearden,* then, a sentencing court must make two determinations to constitutionally revoke a defendant's probation. First, the probationer's conduct in failing to comply with the financial conditions of his probation must be considered. It must be determined whether the probationer willfully refused or was responsible for the failure to pay or whether the probationer made a bona fide effort to acquire the resources to pay. Imprisonment may be used as a means to enforce collection of fines or court costs or restitution when the probationer willfully refuses to pay, although he has the means to pay, or he does not make a bona fide effort to acquire the resources to pay. *Tate v. Short,* 401 U.S. 395, 28 L. Ed. 2d 139, 91 S. Ct. 668 (1971); *Williams v. Illinois,* 399 U.S. 235, 26 L. Ed. 2d 586, 90 S. Ct. 2018 (1970). If, however, the sentencing court determines that the probationer made a bona fide effort or is not at fault in failing to pay, the court should then consider alternative measures of punishment to imprisonment. Only if the alternative measures are inadequate to meet the State's interests in punishment and deterrence may the court imprison a probationer despite his bona fide effort to pay. Alternatives to imprisonment that have been suggested include reduction of the fine imposed, extension of time to pay, *and performance of public service tasks in lieu thereof.*" (Emphasis added.) 10 Kan. App. 2d at 395.

K.S.A. 1993 Supp. 21-4610(c), which sets forth the conditions of probation or suspended sentence, is instructive and provides in pertinent part:

"The court may impose any conditions of probation, suspension of sentence or assignment to a community correctional services program that the court deems proper, including but not limited to requiring that the defendant:

. . . .

"(10) *perform community or public service work* for local governmental agencies, private corporations organized not for profit, or charitable or social service organizations performing services for the community;

"(11) *perform services under a system of day fines whereby the defendant is required to satisfy fines, costs or reparation or restitution obligations by performing services for a period of days determined by the court* on the basis of ability to pay, standard of living, support obligations and other factors." (Emphasis added.)

Finally, our research has located only one case which has examined the question of whether community service was a viable alternative to a mandatory minimum fine. In *Johnson v. State*, 495 So. 2d 188 (Fla. Dist. App. 1986), the full opinion of the court reads:

"Indigent Henry Lee Johnson appeals an order requiring him to perform sixty hours of community service in lieu of paying a fine of $200.00 in costs after he received a guidelines sentence of five years in the state prison for attempted burglary of a dwelling.

"Johnson claims that section 27.3455, Florida Statutes (1985), which authorizes a court to impose such service in lieu of a fine, is unconstitutional in that it violates the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States. Johnson draws our attention to *Williams v. Illinois*, 399 U.S. 235, 90 S. Ct. 2018, 26 L. Ed. 2d 586 (1970) and tells us *Williams* prohibits incarceration solely because one is indigent. The concept and the program of community service is, however, not one requiring incarceration. It is a means through which the state meets its goals of punishment and deterrence as is permitted under *Bearden v. Georgia*, 461 U.S. 660, 103 S. Ct. 2064, 76 L. Ed. 221 (1983).

"We hold section 27.3455, Florida Statues (1985), and section 948.031, Florida Statutes (1983), constitutional and, thus, affirm."

The imposition of a fine, costs, and order of restitution against an indigent criminal defendant is not inherently unconstitutional. However, before an indigent defendant may be incarcerated for failure to pay a fine, costs, or restitution it must be shown not

only that the defendant is indigent but that the defendant has willfully refused to make such payment or has failed to make sufficient bona fide efforts to legally acquire the resources to pay. If an indigent defendant cannot make such payments despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternative measures of punishment adequate to meet the State's interests in punishment and deterrence, such as community service.

The ordinance now before us provides, as an alternative to the mandatory fine, that the court may order an indigent defendant to perform community service. We conclude that the ordinance provides a sufficient alternative method of punishment as contemplated by *Bearden* and is not unconstitutional when applied to indigents such as the defendant here. The trial court erred in finding that § 5.66.055 of the Code of the City of Wichita was unconstitutional as to this defendant. The ordinance does not violate Sections 1 and 2 of the Kansas Constitution Bill of Rights, nor does it violate the Due Process and Equal Protection Clauses of the United States Constitution.

We now turn to the defendant's contention that the city ordinance violates his rights to due process and is unconstitutional because of vagueness. In support of his argument, the defendant contends that the language in section (a)(1) of the City's ordinance, which makes intentional conduct "that causes an obstruction to or interference with" the use of property as a lawful business a criminal violation, is so vague and indefinite that a person cannot determine what conduct is prohibited.

At the outset, we repeat certain familiar principles and rules relating to constitutional attacks on statutes or ordinances based upon assertions that the ordinance is vague and indefinite. Those rules were recently outlined in *City of Wichita v. Wallace*, 246 Kan. 253, 788 P.2d 270 (1990), as follows:

"The void-for-vagueness analysis is based upon a due process requirement that a criminal statute is unconstitutionally vague and indefinite unless its language conveys a sufficiently definite warning of the conduct proscribed when measured by common understanding and practice. *State v. Dunn*, 233 Kan. 411, 418, 662 P.2d 1286 (1983). The United States Supreme Court in *Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972), stated:

'It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of [those] freedoms." Uncertain meanings inevitably lead citizens to " 'steer clear far wider of the unlawful zone' " . . . . than if the boundaries of the forbidden areas were clearly marked.'

"This court has also discussed the rules regarding vagueness, stating:
'The test to determine whether a criminal statute is unconstitutionally void by reason of being vague and indefinite is whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. If a statute conveys this warning it is not void for vagueness. Conversely, a statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process. At its heart the test for vagueness is a common sense determination of fundamental fairness.' *State v. Kirby,* 222 Kan. 1, 4, 563 P.2d 408 (1977).
This court has recognized that the standards of certainty in a statute punishing criminal offenses are higher than those depending primarily upon civil sanction for enforcement. *State ex rel. Murray v. Palmgren,* 231 Kan. 524, 533, 646 P.2d 1091 (1982). . . . Finally, this court has recognized that, in determining whether an ordinance is void for vagueness, the following two inquiries are appropriate: '(1) whether the ordinance gives fair warning to those persons potentially subject to it, and (2) whether the ordinance adequately guards against arbitrary and discriminatory enforcement.' *Dunn,* 233 Kan. at 418 (citing *Cardarella v. City of Overland Park,* 228 Kan. 698, 702, 620 P.2d 1122 [1980])." 246 Kan. at 258-59.

Additional rules are set forth in *State v. Rose,* 234 Kan. 1044, 677 P.2d 1011 (1984), where we stated:

"In addition Kansas has long held a statute will not be declared void for vagueness and uncertainty where it employs words commonly used, previously judicially defined or having a settled meaning in law. *In re Brooks,* 228 Kan. at 544. . . . A statute is also more readily upheld against a charge of vagueness if the offense is one which requires a specific intent. See *State v. Dunn,* 233 Kan. at 421, 422; 21 Am. Jur. 2d, Criminal Law § 17." 234 Kan. at 1046.

With the foregoing rules in mind, we now turn to the issue of whether Wichita City Code § 5.66.055(a)(1) is unconstitutionally vague on its face.

The defendant contends that the ordinance fails to adequately define or list what types of conduct constitute either an "interference" or "obstruction" with the free and uninterrupted operation of a lawful business. The defendant argues that the vaguely written ordinance will necessarily require individuals to guess as to what types of conduct are prohibited by the ordinance. The defendant also maintains that the ordinance infringes upon First Amendment interests, causing a "chilling effect."

At the outset, we note that the trial judge apparently found no problem with the language the defendant now asserts is vague and indefinite. The trial court not only accepted the jury's verdict but found the defendant guilty of violating § 5.66.055(a) and further imposed the mandatory $250 fine under subsection (b)(2). If the trial court had concluded the ordinance itself was unconstitutionally vague, it would not have found the defendant guilty and imposed sentence. It appears the court's only concern as to constitutionality was based upon the mandatory nature of the fine as it related to the defendant's status as an indigent.

For convenience, we repeat the relevant language of the ordinance that the defendant claims is unconstitutionally vague. It reads:

"(a) Interference with the conduct of a lawful business is:

(1) Intentional conduct at or in any building owned, operated or controlled by a private individual or corporation *that causes an obstruction to or interference with the free and uninterrupted use of such property as a lawful business* by any employee, patron, patient or other invitee on such premises, or which prevents the free and uninterrupted ingress, egress, or regress therein, thereon or thereto." (Emphasis added.)

A quick review of the facts of this case indicate that the defendant was arrested for "sitting in front of the door, blocking entry and exit and shouting threats at or in" the clinic in violation of § 5.66.055(a)(1). This type of conduct is clearly prohibited by the plain language of the ordinance, which proscribes any interference or obstruction "which prevents the free and uninterrupted in-

gress, egress, or regress therein, thereon and thereto." As noted earlier, a statute or ordinance will not be declared void for vagueness "where it uses words of commonly understood meaning." *Reed v. Kansas Racing Comm'n*, 253 Kan. 602, 617, 860 P.2d 864 (1993).

The defendant contends that the ordinance fails to define what types of conduct constitute a prohibited "interference" or "obstruction" to a lawful business. However, this court has stated that such sufficiency in a criminal statute is not necessary if the general statement of the offense is written in "plain legal parlance, well defined by judicial interpretation, and in language commonly understood by persons of average intelligence." *State v. Ashton*, 175 Kan. 164, 169, 262 P.2d 123 (1953). The term "interfere" has been defined as: "To check; hamper; hinder; infringe; encroach; trespass; disturb; intervene; intermeddle; interpose." Black's Law Dictionary 814 (6th ed. 1990). The term "obstruct" is defined as:

"To hinder or prevent from progress, check, stop, also to retard the progress of, make accomplishment of difficult and slow. [Citation omitted.] To be or come in the way of or to cut off the sight of an object. To block up; to interpose obstacles; to render impassable; to fill with barriers or impediments, as to obstruct a road or way." Black's Law Dictionary 1077 (6th ed. 1990).

Suffice it to say we find the terms "interference" and "obstruction" as used in this ordinance are not vague and uncertain in meaning, but on the contrary are well-defined, with a generally understood meaning. While the ordinance may be imprecise, we conclude that it gives a clear and sufficient warning as to the conduct proscribed. The defendant's arguments that the ordinance in question is so vague that it deprives him of constitutional due process is wholly without merit.

The defendant also asserts that the ordinance creates a chilling effect on his First Amendment rights to free speech. Although this was not a basis for the trial court's ruling, we will briefly consider the argument.

Under the First Amendment of the United States Constitution, a private property owner cannot be subjected to another's free speech rights unless the privately owned property has assumed "to some significant degree the functional attributes of public

property devoted to public use." *Central Hardware Co. v. NLRB*, 407 U.S. 539, 547, 33 L. Ed. 2d 122, 92 S. Ct. 2238 (1972). As such, private citizens do not have an unqualified right to participate in free speech and assembly on privately owned property. *Hudgens v. NLRB*, 424 U.S. 507, 518-19, 47 L. Ed. 2d 196, 96 S. Ct. 1029 (1976). Private citizens do, however, have protected First Amendment rights on public streets and sidewalks. *Flower v. United States*, 407 U.S. 197, 198-99, 32 L. Ed. 2d 653, 92 S. Ct. 1842 (1972).

The ordinance now under review does not purport to regulate speech, but instead regulates unlawful conduct on property owned, operated, or controlled by a private individual or corporation. Furthermore, the defendant has failed to present any evidence which would demonstrate that the privately operated clinic in this case has assumed the "functional attributes of public property devoted to public use." *Central Hardware*, 407 U.S. at 547. As there is no evidence that the clinic has taken on the status of a public forum, the defendant is not afforded First Amendment protections for his illegal conduct on privately owned property. His arguments in this respect are also without merit.

We have carefully reviewed all of the arguments of both parties and hold that § 5.66.055 of the Code of the City of Wichita is not unconstitutional under the Due Process and Equal Protection Clauses of the Bill of Rights of the Kansas Constitution and of the United States Constitution. The trial court erred in finding the ordinance violated this defendant's constitutional rights.

The appeal is sustained, and the case is remanded with directions to resentence the defendant. If the court finds that the defendant is still indigent, then he should be sentenced in accordance with subsection (c) of the ordinance to perform an appropriate amount of community service.