IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 108,586

STATE OF KANSAS,
*Appellee*,

v.

KIARA M. WILLIAMS,
*Appellant*.

SYLLABUS BY THE COURT

1.

Under current caselaw, a trial court should not use a jury instruction that tells the jury not to consider sympathy toward either party except under very unusual circumstances.

2.

Where a defendant's theory of defense to an aiding and abetting prosecution is that the defendant was merely present in the vicinity of the crime scene or simply associated with the principal actors, the better practice is for the trial court to modify PIK Crim. 3d 54.05 to include the language from the official comment, to-wit: Mere association with the principals who actually commit the crime or mere presence in the vicinity of the crime is insufficient to establish guilt as an aider and abettor.

3.

The merits of a claim of ineffective assistance of trial counsel ordinarily are not addressed for the first time on direct appeal.

1

4.

An argument by defense counsel that the defendant's behavior may have been morally or ethically wrong but that the defendant's acts were not legally a crime is not a guilt-based strategy that overrides the defendant's not guilty plea and that warrants a consideration of the defense counsel's alleged ineffectiveness on direct appeal.

5.

The doctrine of cumulative error does not apply where the reviewing court has not found the existence of more than one trial error.

Appeal from Sedgwick District Court; CLARK V. OWENS II, judge. Opinion filed July 3, 2014. Affirmed.

*Stephen J. House*, of Wichita, argued the cause and was on the brief for appellant.

*Lesley A. Isherwood*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Kiara M. Williams directly appeals her convictions for felony murder, aggravated burglary, and aggravated assault. The charges arose out of an incident in which Williams accompanied Kevin Brown, Quartez Brown, and Jaleesa Bonner to the apartment of Otis Bolden, where Kevin and Quartez entered the apartment, assaulted Ashley Green with a handgun, and fatally shot Bolden. Williams and Bonner directed the Browns to Bolden's apartment and waited in the car to whisk them away after the shooting. Williams contends: (1) The district court erred in providing a no-sympathy jury instruction; (2) the district court erred in refusing to supplement the pattern jury

instruction on aiding and abetting; (3) trial counsel provided ineffective assistance; and (4) cumulative error denied her a fair trial. Finding no reversible error, we affirm.

FACTUAL AND PROCEDURAL OVERVIEW

The events leading to this criminal prosecution began to unfold in the early morning hours of April 26, 2010, when Williams and Bonner, together with their friend, Rika Evans, left a local club and gathered at Bolden's apartment, along with Reader Watley. After Bonner accompanied Bolden into his bedroom, she interpreted a comment he made as indicating that he had participated with a group of men who had raped her some 2 years earlier. That prompted Bonner to indicate that she wanted to leave the apartment.

Bolden drove the three women—Bonner, Williams, and Evans—to the home of Bonner and Evans on Glendale Street, albeit Williams would return to Bolden's apartment to stay the night. Enroute back to his apartment, Bolden picked up Ashley Green. Bolden and Green spent the night in his bedroom, while Williams and Watley spent the night on the couch. There was conflicting testimony as to whether there was any sexual activity involving Williams. Watley drove Williams home the next morning.

That next morning at the Glendale house, Bonner told her boyfriend, Kevin, about Bolden's involvement with her prior rape. Additionally, according to Evans and Bonner, Williams told Kevin that Watley and Bolden had sexually assaulted her the night before. Kevin then called his cousin, Quartez, who came to the Glendale house where the group discussed a course of action. There was conflicting testimony as to the group's discussions, with variations of the plan being to rob Bolden, to rough-up Bolden, to talk to him, or for Kevin to simply "take care of it." What is undisputed is that the Brown cousins, Kevin and Quartez, and two of the women, Bonner and Williams, left the

3

Glendale house in an automobile, enroute to Bolden's apartment. Apparently, Kevin did not want the women to go, but they insisted on going. Along the way, they stopped at the house of Cody Baker, also known as "Drop," ostensibly to pick up firearms. The Brown cousins had never been to Bolden's apartment, so the women directed them to the apartment complex and then to Bolden's particular apartment.

At the complex, Kevin and Quartez directed the women to stay in the car, and the men entered Bolden's apartment. They first encountered Green in the living room and, at gunpoint, directed her to lie on the ground and asked for Bolden's location. The cousins proceeded to the bedroom indicated by Green, and she heard gunshots, together with the inquiry, [W]hy did you rape my home girl?" Green then heard a window shatter and saw one of the assailants exit the apartment through the living room. Apparently, Bolden jumped through a bedroom window and attempted to get away, although he would be discovered later on the sidewalk at the complex and would subsequently die from gunshot wounds.

When Bonner and Williams saw Bolden running around the apartment building, they jumped into the front seat of their vehicle, with Bonner driving. After picking up the Brown cousins, Bonner stopped the vehicle briefly at Drop's house before returning to the Glendale house.

At various times thereafter, Williams told law enforcement officers different versions of what happened, minimizing her involvement, knowledge, and culpability in the incident. Ultimately, the State would charge Williams with first-degree murder or, in the alternative, felony murder, along with aggravated burglary and aggravated assault. The case proceeded to jury trial, where Williams would testify in her own behalf, relating that she simply left the Glendale house in the automobile with the other three because she needed to pick up her daughter and she thought they were going to sell marijuana rather

4

than head to Bolden's house. Nevertheless, the jury convicted Williams of felony murder, aggravated robbery, and aggravated assault.

Of the other three participants, Bonner entered a plea, was sentenced, and has not appealed. Kevin and Quartez Brown went to trial, were convicted, and have appeals pending before this court which were heard on the same docket with Williams' case. However, the three pending appeals raise completely different issues so that cross-referencing among them will not significantly shorten our task.

## NO-SYMPATHY JURY INSTRUCTION

At the State's request and over Williams' objection, the district court included a jury instruction (hereafter referred to as the "no-sympathy instruction") that was patterned after the instruction formerly set forth in PIK Crim. 3d 51.07: "You must consider this case without favoritism or sympathy for or against either party. Neither sympathy nor prejudice should influence you." Subsequently, the PIK committee deleted the no-sympathy instruction because it was disapproved for general use. The trial court acknowledged the PIK committee's disapproval but explained its ruling as follows:

> "I rarely give this instruction but I think this is one that it is appropriate. Just because a witness may cry on the witness stand, I don't think it's sufficient in and of itself. But . . . in addition to her crying a number of times on the witness stand, she has frequently been very emotional in front of the jury throughout the trial. It's all—it's on a daily basis and and it's a number of times each day that I see her breaking down in the courtroom. So I think that it's appropriate for the jury to understand this. And so I think this is a unique case and based upon the very factual specific need for it, I think [the no-sympathy instruction] should be included in this packet."

5

On appeal, Williams labels the no-sympathy instruction as "an objectionable instruction," declares that giving the instruction over the defense's objection was "not a small error," asserts that the State asked for the instruction to preclude the jury's determination of her credibility, and summarily concludes that the giving of the no-sympathy instruction "denied her a fair trial." The State counters that "emotions ran high" during Williams' entire trial, which is a circumstance that cannot be fully appreciated from a cold record, and that such unusual circumstances warranted the instruction or, at least, rendered any error harmless.

*Standard of Review*

"For jury instruction issues, the progression of analysis and corresponding standards of review on appeal are: (1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012)." *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012).

*Analysis*

Williams objected to the giving of the no-sympathy instruction and the district court's comments on the record indicate that it understood the grounds for that objection. See K.S.A. 22-3414(3) (A party must object to an instruction before the jury retires to consider its verdict, "stating distinctly the matter to which the party objects and the

6

grounds of the objection unless the instruction or the failure to give an instruction is clearly erroneous."). Accordingly, Williams passes the first test of reviewability.

The next step is to consider whether the instruction was legally appropriate. As noted, the PIK committee has indicated that the no-sympathy instruction is not approved for general use. But we note that in a case with the same name, *State v. Williams*, 42 Kan. App. 2d 725, 727-28, 216 P.3d 707 (2009), *rev. denied* 290 Kan. 1104 (2010), a Court of Appeals panel rejected the PIK committee's rationale for finding that the no-sympathy instruction is objectionable, specifically finding that it is not "inherently pernicious to tell jurors not to do things they should not do." The *Williams* panel referred to *State v. Sully*, 219 Kan. 222, 226, 547 P.2d 344 (1976), which initially discussed the PIK committee's view on the no-sympathy instruction and found that it may be the better practice to omit the no-sympathy instruction because the instruction "'tells the jury what not to do rather than what to do.'" 42 Kan. App. 2d at 727. But the *Sully* court "hasten[ed] to add that the giving of such an instruction would not constitute error." 219 Kan. at 226.

But more recently than *Sully*, this court declared that "[t]he sympathy instruction should only be used under very unusual circumstances." *State v. Baker*, 281 Kan. 997, 1004, 135 P.3d 1098 (2006); see *State v. Reser*, 244 Kan. 306, 315-17, 767 P.2d 1277 (1989). And just last year, we noted that the PIK instructions no longer provide for the routine inclusion of a no-sympathy instruction. *State v. Jones*, 298 Kan. 324, 338-39, 311 P.3d 1125 (2013). The State has not challenged that precedent. Consequently, we will proceed under the *Baker* rule that a no-sympathy instruction is only legally appropriate in very unusual circumstances.

The tougher question is whether the instruction was factually appropriate, *i.e.*, whether the facts of this case presented very unusual circumstances. The *Baker* court noted that *State v. Rhone*, 219 Kan. 542, 548 P.2d 752 (1976), was "the only case where

7

this court has found sufficiently unusual circumstances to support a sympathy instruction." *Baker*, 281 Kan. at 1005. In *Rhone*, the district court took the victim's trial testimony at the victim's home because the victim was too ill with cancer to testify in the courtroom.

Certainly, a defendant's display of emotion is not as unusual as conducting court in an ailing victim's home. Nevertheless, we should view the cold record through a deferential lens, recognizing that the veteran trial judge was in a better position to assess whether the defendant's courtroom demeanor was an unusual circumstance that needed to be addressed for the jury. Moreover, none of the cases presented by the parties is so factually similar as to mandate a result here, and we are inclined to side with the discretion of the trial judge.

Nevertheless, even if we were to find that the no-sympathy instruction was not factually appropriate in this case, we would be convinced that, even under the most stringent harmless error test, "there is no reasonable possibility that the error contributed to the verdict." *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). We specifically reject Williams' argument that the instruction hindered or denied "the jury's determination of the weight and credit to be given . . . Williams' testimony." As the State points out, looking at the instructions as a whole, the jurors were told that it was their responsibility to determine the weight and credit to be given the testimony of each witness, that they had the right to rely upon common knowledge and experience with respect to matters about which a witness had testified, and that their verdict must be founded entirely upon the evidence admitted and the law as given in the court's instructions. The no-sympathy instruction merely removed sympathy and prejudice from the equation without changing the credibility calculus.

In short, the district court's inclusion of a no-sympathy instruction in the package of jury instructions was not reversible error.

SUPPLEMENTATION OF THE AIDING AND ABETTING INSTRUCTION

Williams was prosecuted as an aider and abettor, and the jury received the following aiding and abetting instruction, which conforms with PIK Crim. 3d 54.05 (responsibility for crimes of another):

"A person who, either before or during its commission, intentionally aids another to commit a crime with intent to promote or assist in its commission is criminally responsible for the crime committed regardless of the extent of the defendant's participation, if any, in the actual commission of the crime."

Williams requested that the instruction be supplemented, consistent with the PIK instruction's official Comment: "Mere association with the principals who actually commit the crime or mere presence in the vicinity of the crime is insufficient to establish guilt as an aider and abettor." PIK Crim. 3d 54.05, Comment (citing *State v. Green*, 237 Kan. 146, 697 P.2d 1305 [1985]). The district court refused the requested instruction modification.

*Standard of Review*

The progression of analysis and corresponding standards of review are the same as set forth in the preceding issue. See *Plummer*, 295 Kan. 156, Syl. ¶ 1.

"'Generally, a defendant is entitled to instructions on the law applicable to his or her defense theory if there is sufficient evidence for a rational factfinder to find for the defendant on that theory. *State v. McCullough*, 293 Kan. 970, 974, 270 P.3d 1142 (2012) (self-defense). And if that defendant requests an instruction at trial, the court must view

9

the evidence in the light most favorable to the defendant. *State v. Anderson*, 287 Kan. 325, 334, 197 P.3d 409 (2008).' *State v. Friday*, 297 Kan. 1023, 1036-37, 306 P.3d 265 (2013)." *State v. Hilt*, 299 Kan. 176, 184, 322 P.3d 367 (2014).

*Analysis*

Williams contends on appeal that her defense theory was that she "was just in the car along for the ride with no intent to commit a crime." Williams testified that she understood that Kevin Brown was just going to talk to someone. Therefore, she argues that the district court's refusal to add the additional language about mere presence or association "removed from the jury's consideration defendant's specific intent to commit the crimes charged."

We have addressed this issue under similar factual circumstances a number of times recently, always declining to reverse. In *Hilt*, we explained:

"We examine 'jury instructions as a whole, without focusing on any single instruction, in order to determine whether they properly and fairly state the applicable law or whether it is reasonable to conclude that they could have misled the jury.' *State v. Williams*, 42 Kan. App. 2d 725, Syl. ¶ 1, 216 P.3d 707 (2009), *rev. denied* 290 Kan. 1104 (2010).

"Hilt argues that the facts of his case and his theory of defense required the district judge to instruct the jury that '[m]ere association with the principals who actually commit the crime or mere presence in the vicinity of the crime is insufficient to establish guilt as an aider or abettor.' Without this supplement to the usual PIK instruction, Hilt contends, the jury was left with an incomplete understanding of aiding and abetting theory.

"The additional instruction language Hilt sought properly states the law in Kansas. See *State v. Jefferson*, 297 Kan. 1151, 1167-68, 310 P.3d 331 (2013). But we have previously rejected arguments that the language was indispensable to a jury's understanding of a case. See, *e.g.*, *State v. Edwards*, 291 Kan. 532, 551-52, 243 P.3d 683

10

(2010) (refusal to give 'mere association or presence' language not reversible error); *State v. Holt*, 285 Kan. 760, 772, 175 P.3d 239 (2008) (refusal to give 'mere presence or association' language not error); *State v. Davis*, 283 Kan. 569, 582-83, 158 P.3d 317 (2006) (refusal to instruct on 'mere presence' not reversible error).

"In *Edwards*, defendant Edrick Edwards made the same argument that Hilt raises on this appeal. The State had charged Edwards with felony murder and attempted aggravated robbery. At trial, Edwards' theory of defense was that he was with the three perpetrators at the time of the crime, but he had been unaware of their plan to rob the victim. Edwards requested a modification to the aiding and abetting instruction to include the same language at issue here. The district court denied Edwards' request to supplement the aiding and abetting instruction. On appeal, this court acknowledged that the requested language 'precisely fit the defense theory.' 291 Kan. at 552. And this court even suggested that 'the better practice would have been to modify the patterned instruction' as requested. 291 Kan. at 552. But this court ultimately held that refusal to supplement the aiding and abetting instruction was not reversible error. 291 Kan. at 552.

"We arrive at the same conclusion here. PIK Crim. 3d 54.05 on aiding and abetting, given without the additional language, was not reversible error. However, the better practice is to add the requested language in cases such as this, and failure to do so may imperil convictions in future similar cases. See *State v. Llamas*, 298 Kan. 246, 258-62, 311 P.3d 399 (2013)." *Hilt*, 299 Kan. at 185-86.

Williams is in the same position as Hilt. It would have been the better practice for the district court to give the modified aiding and abetting instruction, but the failure to do so does not result in reversible error.

INEFFECTIVE ASSISTANCE OF COUNSEL

Next, Williams complains that she was denied her right to effective assistance of counsel under the Sixth Amendment to the United States Constitution and under Section 10 of the Kansas Constitution Bill of Rights. Specifically, she asserts that her attorney

pursued a guilt-based defense strategy when he stated in closing argument that it was morally and ethically wrong for Williams to be involved in the incident.

*Standard of Review*

"Allegations of ineffective assistance of counsel, whether based on claims of deficient performance or on a conflict of interest, involve mixed questions of fact and law. This court therefore reviews the underlying factual findings for substantial competent evidence and the legal conclusions based on those facts de novo." *Boldridge v. State*, 289 Kan. 618, Syl. ¶ 3, 215 P.3d 585 (2009). On the other hand, "[t]he merits of a claim of ineffective assistance of counsel ordinarily are not addressed for the first time on direct appeal." *State v. Dull*, 298 Kan. 832, 839, 317 P.3d 104 (2014) (citing *Rowland v. State*, 289 Kan. 1076, 1084, 219 P.3d 1212 [2009]; *State v. Carter*, 270 Kan. 426, 433, 14 P.3d 1138 [2000]; *State v. Van Cleave*, 239 Kan. 117, 119, 716 P.2d 580 [1986] [overruling *State v. Pink*, 236 Kan. 715, 696 P.2d 358 (1985)]).

*Analysis*

Williams points to a small segment of her attorney's closing argument and declares that her attorney essentially admitted her criminal intent. We take the liberty of placing the language of which Williams complains in context, with the language that Williams targets in italics:

> "You know, and we talked about in jury selection, the idea of legal responsibility versus moral and ethical responsibility. And I just bring that up because, *you know, should she have been involved in any of this? Absolutely not. Was it wrong for her to be involved in it in the moral, ethical sense? Absolutely*. You know, I don't think the answer is quite that easy on the legal side, though."

Normally, we do not consider a claim of ineffective assistance of counsel until the district court has had an opportunity to conduct an evidentiary hearing, either pursuant to a K.S.A. 60-1507 motion hearing or pursuant to a *Van Cleave* remand on a direct appeal. We recently explained:

> "Although 'there are circumstances when no evidentiary record need be established, when the merit or lack of merit of an ineffectiveness claim about trial counsel is obvious,' and an ineffectiveness claim can therefore be resolved when raised for the first time on appeal, these circumstances are 'extremely rare.' *Rowland*, 289 Kan. at 1084-85; see also *State v. Levy*, 292 Kan. 379, 253 P.3d 341 (2011) (declining to consider ineffective assistance claims for first time on direct appeal; declining to remand for *Van Cleave* hearing based on defendant's failure to meet minimal requirements); *Laymon v. State*, 280 Kan. 430, 444, 122 P.3d 326 (2005) (direct appeal counsel's performance objectively unreasonable; performance prejudiced defendant); *Carter,* 270 Kan. at 433-34, 440-41 (trial counsel's pursuit of guilt-based defense despite client's contrary wishes ineffective, prejudicial per se)." *Dull*, 298 Kan. at 839.

Williams tries to shoehorn her facts into the prejudicial per se scenario that caused the *Carter* court to resolve the defendant's ineffective assistance of counsel claim without the benefit of an evidentiary hearing. But *Carter* is readily distinguishable. There, defense counsel conceded that Carter was involved in the killing in an effort to entice the jury to convict Carter of the lesser crime of felony murder, instead of premeditated first-degree murder. However, Carter had pled not guilty to all charges, had denied any involvement in the killing, and had not consented to his attorney's concession. The *Carter* court refused to characterize defense counsel's actions as trial strategy because the attorney's conduct "betray[ed] the defendant by deliberately overriding his plea of not guilty." 270 Kan. at 440.

In contrast, Williams' attorney's strategy was consistent with her not guilty plea. Her attorney argued that she was not *legally* guilty even if the jurors found her conduct to

13

be morally or ethically wrong. The argument was a valid tack to take and did not represent such a "breakdown in the adversarial process that would justify a presumption that [Williams'] conviction was insufficiently reliable to satisfy the Constitution." *United States v. Cronic*, 466 U.S. 648, 662, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). Accordingly, Williams must show more than she has presented here, and we decline to rule on her ineffective assistance of trial counsel claim without the benefit of having the district court address the question first.

In her brief, Williams did not request a remand for an evidentiary hearing pursuant to *Van Cleave*. We could make such a remand on our own initiative. But as we have previously noted, we expect to see something more than has been presented here.

> "In *Van Cleave*, we set guidelines for an appellate court to follow in exercising its discretion when deciding whether to remand a case for an evidentiary hearing. See 239 Kan. at 119-21. In that case, we noted an appellant's counsel must do more than simply read the cold record of the proceedings before the district court and then argue that he or she would have handled the case differently. We held that counsel must attempt to determine the circumstances under which trial counsel did—or did not—proceed as the appellate counsel believes preferable and conduct at least some investigation into the claimed ineffectiveness. We then noted: 'Except in the most unusual cases, [for an appellate counsel] to assert a claim of ineffective assistance of counsel without an independent inquiry and investigation apart from reading the record is questionable to say the least.' 239 Kan. at 120-21." *State v. Levy*, 292 Kan. 379, 389, 253 P.3d 341 (2011).

Therefore, we decline to make a *Van Cleave* remand. If Williams should develop further evidence that her trial attorney was ineffective, she can pursue that claim through a K.S.A. 60-1507 motion.

14

Finally, Williams argues that cumulative error prevented her from receiving a fair trial. The reversibility test for cumulative error is "'"whether the totality of circumstances substantially prejudiced the defendant and denied the defendant a fair trial. No prejudicial error may be found under this cumulative effect rule, however, if the evidence is overwhelming against the defendant."' *State v. Edwards*, 291 Kan. 532, 553, 243 P.3d 683 (2010) (quoting *State v. Ellmaker*, 289 Kan. 1132, Syl. ¶ 12, 221 P.3d 1105 [2009])." *State v. Cruz*, 297 Kan. 1048, 1073-74, 307 P.3d 199 (2013).

*Standard of Review*

Given that the reversibility test for cumulative error utilizes a totality of the circumstances approach, an appellate court must necessarily "review the entire record and engage in an unlimited review." 297 Kan. at 1074.

*Analysis*

The first task in the cumulative error analysis is to count up the errors, because the doctrine "does not apply if no error or only one error supports reversal." *State v. Dixon*, 289 Kan. 46, 71, 209 P.3d 675 (2009). Reviewing our decisions in reverse order, we found that this was not an extraordinary case in which we could address an ineffective assistance of counsel claim for the first time on appeal. Based upon the principle of stare decisis, we declined to find that the trial court erred in refusing to modify the PIK instruction on aiding and abetting, notwithstanding that it would have been the better practice to have done so. Likewise, we declined to second guess the trial court's determination that Williams' emotional outbursts throughout the trial created "very unusual circumstances" that justified the giving of a no-sympathy jury instruction. See *Baker*, 281 Kan. at 1004.

15

Consequently, there were no errors to accumulate, and Williams' claim of cumulative error must fail.

Affirmed.

MORITZ, J., not participating.

DAVID J. KING, District Judge, assigned.[1]

[1]**REPORTER'S NOTE:** District Judge King was appointed to hear case No. 108,586 vice Justice Moritz pursuant to the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.