NOT DESIGNATED FOR PUBLICATION

No. 113,073

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DENNIS LESSARD,
*Appellant*,

v.

WILLIAM O. REED, JR., M.D.,
*Appellee*.


MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES F. VANO, judge. Opinion filed May 13, 2016. Affirmed.

*Andrew B. Protzman*, of Protzman Law Firm, LLC, of Kansas City, Missouri, and *Bradley D. Kuhlman* and *Lara M. Guscott*, of Kuhlman & Lucas, LLC, of Kansas City, Missouri, for appellant.

*B.K. Christopher* and *Justin D. Fowler*, of Horn, Aylward & Bandy, LLC, of Kansas City, Missouri, for appellee.

Before BUSER, P.J., LEBEN and BRUNS, JJ.

BUSER, J.:  Dennis Lessard, a patient of Dr. William O. Reed, Jr., sued the physician for medical malpractice. After a trial, the jury found Dr. Reed was not at fault. On appeal, Lessard raises two issues. First, he contends there was insufficient medical causation testimony to warrant the trial court giving the jury instructions on mitigation of damages. Second, he claims that submission of the mitigation of damages instructions was reversible error because the instructions allowed the jury "to use the alleged failure

1

to mitigate as a complete defense to fault." Finding no reversible error in the mitigation of damages instructions, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Preliminarily, we note the record on appeal is incomplete. The only items from the trial are the testimony of three doctors and the instructions conference. Omitted from the record is the testimony of Lessard, two other doctors, and a physical therapist, among other witnesses who appeared during the 5-day trial. Also omitted from the record are the trial exhibits and counsel's opening statements and closing arguments. Nevertheless, we will summarize the relevant facts based on this limited record.

According to the pretrial order, Lessard claimed that Dr. Reed had severed the superficial radial nerve of his right hand during a thumb joint replacement and DeQuervain's release surgery. As a consequence, Lessard asserted: "The severed nerve resulted in Chronic Regional Pain Syndrome (CRPS), which causes severe chronic pain in all parts of plaintiff's body." Lessard sought damages totaling $4,000,000.

For his part, in the pretrial order, Dr. Reed denied that he had severed the radial nerve. He generally denied that Lessard had sustained damages. Dr. Reed asserted that Lessard failed to keep a follow-up appointment and then remained out of contact for about 15 months. Although Dr. Reed's answer is not in the record, in the pretrial order he incorporated by reference the affirmative defense that Lessard had failed to mitigate his damages.

At trial, the evidence showed that Dr. Reed is board certified in both orthopedic surgery and surgery of the upper extremities. Lessard presented to Dr. Reed in 2005, complaining of bilateral wrist pain. After conservative treatment, Dr. Reed operated on

2

Lessard's right hand on March 16, 2007. Dr. Reed testified that the operation was routine, and that he did not sever the nerve.

Lessard returned to see Dr. Reed on March 27, 2007. X-rays showed the new thumb joint was properly positioned. Dr. Reed then referred Lessard to a certified hand therapist.

Lessard saw Dr. Reed again on May 1, 2007. At that time, Lessard complained of pain and reported that therapy was making it worse. Dr. Reed testified Lessard's pain was to be expected given the hand therapy. Although Dr. Reed asked Lessard to return in 3 months, he did not return until 15 months later, on August 4, 2008.

At that visit, Lessard reported "a burning, aching and tingling sensation over the back of his entire hand." Dr. Reed testified this was "confusing" because it "involves multiple nerves." An EMG nerve conduction test revealed only "mild radial sensory neuropathy on the right side" with "[n]o evidence of any other nerve entrapment." The neuropathy indicated to Dr. Reed that the radial nerve was intact but not performing normally.

Lessard saw Dr. Reed again on August 7, 2008, and the doctor summarized his opinion:

> "I told him that I could not explain the symptoms he was having over his entire hand. What we saw on the EMG was consistent with the previous surgery having been performed and the extent to which the nerve had been able to heal . . . . And we assured him that the nerve was working, just not up to snuff."

Dr. Reed counseled Lessard to wait because the new symptoms might resolve or if they persisted, there could be neck and spinal cord problems which would require

3

additional diagnostic tests. Dr. Reed asked Lessard to return in 3 months, but Lessard never returned.

Lessard had at least two more surgeries on his right hand. On January 2, 2009, he was operated on by plastic surgeon, Dr. Keith Hodge. Dr. Hodge testified that he "explored the wrist and found a severed [radial] nerve." The doctor repaired it with a NeuraGen tube, which involved sewing the ends of the nerve into a small tube so that they would grow together.

Dr. Hodge opined the radial nerve was probably severed during Dr. Reed's surgery. Dr. Hodge addressed the possibility of repair under that scenario:

"Q. . . . [I]f there was a 15-month gap between when the patient last saw Dr. Reed after surgery and before he came back, during that time period, that would have been a time that if a nerve had been severed, it would have been optimal to repair it during that time period?
"A. The optimal time to repair it would be the immediate postoperative period.
"Q. So if the patient stopped seeing a doctor, doesn't come back for 15 months, that's a period in which the nerve could have been repaired if it was severed and probably had a better likelihood of success . . . .
. . . .
"A. The sooner the repair, the better the outcome."

Importantly, nerve conduction tests ordered both by Dr. Reed after his surgery and by Dr. Hodge before his surgery showed at least some connectivity in the radial nerve. When another nerve conduction test was conducted after Dr. Hodge had operated, however, there was no connectivity in the radial nerve. Dr. Reed's retained expert, Dr. Mark Melhorn, opined that based on these tests and other facts that it was Dr. Hodge, not Dr. Reed, who had severed the nerve.

4

Dr. Melhorn also explained, as Dr. Reed had, the importance of patient cooperation after surgery:

"Q. Is it important for patients like Mr. Lessard to follow instructions and try to keep follow-up appointments as much as their health will allow them to do so?
"A. Yes.
. . . .
"Q. Is it fair to say in your opinion that Mr. Lessard's outcome might have been impacted if he would have come back in that three-month period as . . . instructed to do so?
"A. Yes. As I opined in my deposition when [Lessard's counsel] asked me that, it's possible, but without knowing what diagnosis he would have had on that return and/or what symptoms he has, it's difficult to indicate whether there would have been treatment that could have impacted or improved his outcome."

Dr. Melhorn testified that CRPS "is a descriptive term that's used for people who have chronic pain, and we as physicians don't really understand why." Dr. Melhorn believed Lessard developed CRPS at some point after Dr. Hodge had operated.

At the instructions conference, the trial court overruled Lessard's objection to the mitigation of damages instructions explaining:

"On the mitigation issue, I think there's been sufficient testimony in regard to the not keeping follow-up appointment and the mitigation there. The plaintiff has the burden to prove damages that are caused by medical negligence and must do that with a medical expert. Mitigation, particularly in failing to keep follow-up appointments, are matters within the common understanding."

The trial court included mitigation of damages language in two instructions, Nos. 10 and 15. Instruction No. 10 was based on PIK Civ. 4th 106.01, "Issues and Burden of Proof—Plaintiff's Claim—Defendant's Defense." Instruction No. 10 stated:

5

"The plaintiff claims that he was injured due to the defendant's fault in the following respects:

"a) Defendant transected or severed Dennis Lessard's superficial radial nerve during the March 16, 2007 surgery.

"The plaintiff has the burden to prove that his claims are more probably true than not true. The defendant denies that he was negligent in his medical care and treatment of Dennis Lessard.

"The defendant denies that he was at fault in his treatment of Mr. Lessard and further denies that anything that he did, or did not do, caused or contributed to Mr. Lessard's claimed injuries. The defendant also denies the nature and extent of Mr. Lessard's claimed injuries and damages.

"The defendant claims that the plaintiff failed to mitigate his damages in the following respects:  plaintiff did not keep his final follow-up appointment with Dr. Reed in 2007, or failed to seek treatment for the alleged symptoms earlier than he did.

"The defendant has the burden to prove that his claims are more probably true than not true."

Instruction No. 15 was nearly identical to PIK Civ. 4th 171.42:  "In determining the amount of damages sustained by plaintiff, you should not include any loss which plaintiff could have prevented by reasonable prudence and diligence exercised by plaintiff after the loss occurred."

In relevant part, the verdict form provided:

"We, the jury, impaneled and sworn in the above entitled case, upon our oaths, do make the following answers to the questions propounded by the court:

"1.  Do you find Defendant to be at fault?

     YES _____        NO _____

[Proceed to question 2 only if you answered 'yes' to question 1.]

"2.  What damages do you find were sustained by plaintiff, Dennis Lessard?"

6

The verdict form then listed six individual categories of damages with blanks to fill in the dollar amounts. A "Total Damages" category was also listed with a blank to be completed by the jury. Finally, the jury was asked, "Agreement on each of the above questions was by ten or more jurors?" The form then listed "YES" and "NO" with blanks following each choice.

After deliberations, the presiding juror marked "NO" in response to the first question regarding whether Dr. Reed was at fault. The second question regarding damages was left blank as were all the individual blanks relating to damages. The presiding juror marked the blank that indicated that 10 or more jurors had answered the verdict form questions.

Lessard moved for a new trial, but his motion and memorandum in support are not in the record on appeal. However, the record contains a transcript of the hearing on the motion. At the hearing, Lessard reprised his argument from the instructions conference that no expert testimony supported the mitigation of damages instructions. But the trial judge rejected the argument, adding, "I thought at the time, and still do, that Dr. Hodge had enough reasonable degree of medical certainty on the damages."

With regard to the mitigation of damages instructions, the trial court stated that while Instruction No. 10 "could have been more artfully drafted," it did not contain error "when you consider all of the instructions as a whole." In its ruling the trial court emphasized the verdict form—where "the issue of fault was clearly to be considered by the jury . . . and then to get to damages." As a result, the trial court denied the motion for new trial.

Lessard filed a timely appeal.

## WERE THE MITIGATION INSTRUCTIONS LEGALLY APPROPRIATE?

We will first consider Lessard's second argument on appeal. Lessard contends, "the instructions did not explain to the jury that the mitigation defense only applied if they reached the issue of damages, thus permitting the jury to use the alleged failure to mitigate as a complete defense to fault." As a result, Lessard asserts his "constitutional right to a fair trial has been violated and he is entitled to a new trial."

In response, Dr. Reed argues:

"Far from being misleading or confusing, neither of these [Instructions Nos. 10 and 15] states anything about liability or fault at all, much less anything about cutting off liability or acting as a bar to liability. Instead, the plain language . . . make[s] it clear that they pertain to the question of damages."

Our standard of review provides:

"For jury instruction issues, the analytical progression and corresponding standards of review on appeal are: (a) First, the appellate court considers reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (b) next, the court uses an unlimited review to determine whether the instruction was legally appropriate; (c) then, the court determines whether there was sufficient evidence, viewed in the light most favorable to the party requesting the instruction, that would have supported the instruction; and (d) finally, if the district court erred, the appellate court must determine whether the error was harmless, using the test, degree of certainty, and analysis set forth in *State v. Ward*, 292 Kan. 541, Syl. ¶¶ 5-6, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012)." *Foster v. Klaumann*, 296 Kan. 295, Syl. ¶ 1, 294 P.3d 223 (2013).

8

The parties do not dispute our jurisdiction to review this issue on appeal. For this particular argument, Lessard is claiming jury Instructions Nos. 10 and 15 were not legally appropriate.

Instruction No. 10 mirrored, in relevant part, PIK Civ. 4th 106.01. According to the Notes on Use, the instruction must be given in every case. The instruction advised the jury that Lessard claimed he was injured "due to the defendant's fault" when he "transected or severed Dennis Lessard's superficial radial nerve during the March 16, 2007 surgery." The instruction also advised the jury that Dr. Reed "denies that he was negligent in his medical care and treatment of Dennis Lessard" and "denies that he was at fault in the treatment of Mr. Lessard." This section of Instruction No. 10 also informed the jury that "[t]he plaintiff has the burden to prove that his claims are more probably true than not true."

After the language pertaining to Lessard's claims of liability, Instruction No. 10 advised the jury about Dr. Reed's claims about damages: "The defendant claims that the plaintiff failed to mitigate his damages in the following respects:  plaintiff did not keep his final follow-up appointment with Dr. Reed in 2007, or failed to seek treatment for the alleged symptoms earlier than he did." Consistent with the earlier liability portion of the instruction which informed the jury that Lessard had the burden to prove his liability claims, Instruction No. 10 concluded the damages section by stating that Dr. Reed had the "burden to prove that his claims are more probably true than not true."

Immediately after Instruction No. 10, the next three instructions, Instruction Nos. 11, 12, and 13 all related to the issue of Dr. Reed's liability. These instructions addressed a surgeon's standard of care, a surgeon's duty to use the skill and knowledge of a specialist, and that a surgeon's violation of that duty is negligence. None of these instructions intimated that Lessard's failure to mitigate his damages would obviate any negligence by Dr. Reed and necessitate a finding of no liability.

9

Lessard claims that Instruction No. 15, read alone and together with Instruction No. 10, is also legally inappropriate. Preliminarily, we note the placement of Instruction No. 15 in the instructions packet. After the three liability instructions, Instruction No. 14 provided the jury with extensive guidance regarding the determination of damages. Consistent with the subject matter of Instruction No. 14, Instruction No. 15 further advised: "In determining the amount of damages sustained by plaintiff, you should not include any loss which plaintiff could have prevented by reasonable prudence and diligence exercised by plaintiff after the loss occurred."

Lessard contends the two instructions permitted the jury to "use the alleged failure to mitigate as a complete defense to fault." We disagree. First, no language in these instructions stated or intimated that if Lessard failed to mitigate his damages, then Dr. Reed was not liable for medical malpractice.

Second, the language of the two instructions and their placement among the other jury instructions clearly indicated that Dr. Reed's liability for medical malpractice and Lessard's mitigation of damages were separate and distinct considerations for the jury. In Instruction No. 10, the language relating to liability was separate and apart from the language relating to damages. Moreover, Instruction No. 15 related only to damages, not liability, and it immediately followed Instruction No. 14 which related solely to damages.

Moreover, appellate courts "'examine "jury instructions as a whole, without focusing on any single instruction, in order to determine whether they properly and fairly state the applicable law or whether it is reasonable to conclude that they could have misled the jury." [Citation omitted.]'" *State v. Williams*, 299 Kan. 1039, 1046, 329 P.3d 420 (2014). Considering the jury instructions as a whole, we discern no potential for confusion or conflation regarding Lessard's liability claims and Dr. Reed's mitigation of damages claims.

10

Third, we note that the complained of instructions were derived from Pattern Instructions for Kansas, 4th Edition-Civil. Although the use of PIK instructions is not required, it is strongly recommended, as these ""instructions have been developed by a knowledgeable committee to bring accuracy, clarity, and uniformity to jury instructions."' [Citation omitted.]" *State v. Acevedo*, 49 Kan. App. 2d 655, 663, 315 P.3d 261 (2013). Especially with regard to Instruction No. 10, both Lessard and Dr. Reed were equally entitled to state their legal claims and theories in the instruction. And Lessard provides no legal authority wherein a Kansas appellate court has found similar instructions were legally inaccurate.

Fourth, we note the verdict form, consistent with the language and placement of the two instructions, kept separate the issues of liability and damages. Lessard does not complain about the verdict form, and it appears it was derived from PIK Civil 4th. The separate questions asked in the verdict form relating, first, to liability and, second, to damages further underscored the separate nature of the two legal issues.

In summary, we hold that Instruction Nos. 10 and 15 were legally appropriate and did not improperly advise or suggest to the jury that Lessard's failure to mitigate his damages relieved Dr. Reed of liability for medical malpractice.

DID SUFFICIENT EVIDENCE SUPPORT THE MITIGATION INSTRUCTIONS?

In his second issue, Lessard asserts the trial court erred in providing the jury with mitigation instructions because there was insufficient medical evidence presented by Dr. Reed that Lessard's "failure to keep his August 2007 appointment or his failure to seek medical treatment in the intervening time caused or contributed to cause his damages." Dr. Reed counters that when the medical evidence is viewed in a light most favorable to him, there was sufficient evidence to instruct the jury on Lessard's failure to mitigate his damages. Alternatively, Dr. Reed argues that "if error exists, it is harmless error because

11

the jury found no fault on the part of [Dr. Reed], and therefore never reached the issue of damages."

We find Dr. Reed's latter argument is dispositive and, for that reason, assuming there was insufficient evidence to instruct the jury on mitigation of damages, we will consider whether the district court's giving of the instructions was harmless error.

In *State v. Ward*, 292 Kan. 541, 565-66, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012), our Supreme Court held that to find an error harmless under K.S.A. 60-261, K.S.A. 60-2105, and the United States Constitution, a Kansas court must be able to declare the error "did not affect a party's substantial rights, meaning it will not or did not affect the trial's outcome." The level of certainty by which a court must be convinced depends upon whether the error implicates a federal constitutional right. 292 Kan. at 565-66. Where an error implicates a statutory but not federal constitutional right, the party benefiting from the error must persuade the court there is no reasonable probability that the error affected the trial's outcome in light of the entire record for it to be deemed harmless. *State v. McCullough*, 293 Kan. 970, 983, 270 P.3d 1142 (2012). When the error implicates a federal constitutional right, a court will declare the error harmless only if the court is persuaded "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, proves there is no reasonable possibility that the error affected the verdict." *Ward*, 292 Kan. at 569.

Although Lessard mentions that his right to a fair jury trial was violated, he does not assert if this violation implicates any particular provision of the Kansas or United States constitutions or Kansas statutes. Nevertheless, in conducting our analysis of the harmless error question we will apply the higher constitutional standard.

As previously discussed, the jury instructions given in this case individually and collectively focused the jury's decision making on the separate determinations of whether

Dr. Reed was at fault and, if so, whether any damages were caused by the physician's negligence. The verdict form then presented the jury with an analytical progression that began with first answering the question: "Do you find Defendant to be at fault?" The jury marked the verdict form "No." The jury was then instructed to only consider the next question if it answered "Yes" to the first question. The second question asked, "What damages do you find were sustained by plaintiff, Dennis Lessard?" Appropriately, the jury did not answer the question.

Dr. Reed contends that the "jury in this case found [Dr. Reed] was not at fault, and therefore the jury never reached the question of damages. There is no basis to conclude that withholding the instructions related to mitigation of damages would have changed anything." We agree. "A jury is presumed to follow the instructions given to it." *State v. Reid*, 286 Kan. 494, Syl. ¶ 18, 186 P.3d 713 (2008). By all appearances on the verdict form, the jury followed the trial court's instructions, considered the liability question, and did not proceed to consider the issue of damages. As a result, any error in the giving of the mitigation of damages instructions was clearly harmless and could not have affected the verdict in favor of Dr. Reed.

Lessard focuses his argument on *Puckett v. Mt. Carmel Regional Med. Center*, 290 Kan. 406, 228 P.3d 1048 (2010). According to Lessard, Puckett is "controlling." But Puckett was filed more than 2 years before the Kansas Supreme Court overhauled the standard of review for jury instructions in *State v. Plummer*, 295 Kan. 156, 283 P.3d 202 (2012). Moreover, *Puckett* dealt with jury instructions and a verdict form that permitted a possible impermissible shifting of liability. 290 Kan. at 437. As discussed earlier, the mitigation of damages instructions at issue in this appeal did not affect or even relate to any issues of liability.

We conclude that any error in the giving of the mitigation of damages instructions was harmless. Since the jury returned a verdict for Dr. Reed finding that he was not at

fault in causing Lessard's injuries, the jury—faithful to the instructions contained in the verdict form—never reached or considered the issue of damages. Accordingly, we are persuaded beyond a reasonable doubt that the error complained of did not affect the outcome of the trial in light of the entire record. See *Ward*, 292 Kan. at 569.

Affirmed.

* * *

LEBEN, J., concurring: In a negligence case, the jury must first determine whether the defendant is at fault. If so, the jury then compares the fault of the defendant against any other parties claimed to have been at fault (sometimes including the plaintiff). Last, the jury determines the amount of damages; the defendant is then generally responsible for his or her share of the damages based on the defendant's percentage of the fault.

The jury in this case concluded that the defendant, Dr. William O. Reed, Jr., was not at fault. No one else was claimed to have been at fault in this case, but Reed did claim that any damages awarded to the plaintiff, Dennis Lessard, should be reduced because Lessard had failed to mitigate his own damages.

Given the jury's finding that Reed wasn't at fault at all, there is no need for a detailed analysis of the jury instructions Lessard complains about (dealing with Lessard's alleged failure to mitigate his own damages by failing to attend an appointment or by delaying his request for treatment). Reed's claims at trial about Lessard's behavior may have affected the damages award, but they didn't have anything to do with whether Reed was at fault for medical negligence in the first place.

Much as in our recent case of *Dickerson v. St. Luke's South Hospital, Inc.*, 51 Kan. App. 2d 337, 353-54, 346 P.3d 1100 (2015), *rev. denied* 303 Kan. ___ (February 18,

14

2016), the jury's first duty was to determine whether the defendant was at fault at all, and the jury determined he was not. Since the jury determined that Reed wasn't at fault, any error in the damages instructions would be harmless error that could not have affected the jury's verdict. See *Dickerson*, 51 Kan. App. 2d at 353-54; *Lauck v. Cosby*, 3 Fed. Appx. 789, 792 (10th Cir. 2001).

I would affirm the district court on this basis; we need not reach the issue of whether the damages instructions given to the jury were proper.