NOT DESIGNATED FOR PUBLICATION

No. 115,708

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MARC ALLYN JACQUES,
*Appellant*.


MEMORANDUM OPINION

Appeal from Shawnee District Court; NANCY E. PARRISH, judge. Opinion filed July 14, 2017. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Michael F. Kagay*, district attorney, *Jodi Litfin*, deputy district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before GREEN, P.J., POWELL and GARDNER, JJ.


*Per Curiam*: Marc Allyn Jacques asserts in this direct appeal that his convictions for drug related crimes should be retried because the State misstated its burden of proof, the district court admitted irrelevant evidence, and the district court failed to modify a jury instruction as requested by Jacques. For the reasons stated below, we affirm.

1

*Factual and procedural background*

On May 12, 2014, Topeka police officers searched Jacques' home pursuant to a search warrant. After Jacques was taken into custody, Topeka police officers returned to Jacques' residence and searched the premises. A search of Jacques' garage yielded two plastic baggies containing methamphetamine, one plastic baggie containing marijuana, and drug paraphernalia including unused plastic baggies, a digital scale, and pipes "associated with the use of methamphetamine." The two plastic baggies that contained methamphetamine, the unused plastic baggies, and digital scale were found together in the same drawer. Methamphetamine residue was found on the digital scale.

At the same time Jacques' residence was being searched, Corporal Ruben Salamanca of the Topeka Police Department interviewed Jacques. Salamanca read Jacques his *Miranda* rights and Jacques waived them. During the interview, Jacques admitted to using marijuana and methamphetamine and said he preferred to smoke methamphetamine out of a glass pipe. After Salamanca told Jacques that contraband was found at his residence, Jacques said, "'[I]f it's there, it's mine.'" However, Jacques also told Salamanca that anything illegal found on the premises was likely left by one of Jacques' "many visitors."

Jacques was charged with one count of possession of methamphetamine with the intent to distribute, one count of possession of marijuana, and two counts of the unlawful use of drug paraphernalia. During voir dire, the State discussed the concept of reasonable doubt with potential jurors and said that "[r]easonable doubt is not 100 percent." Jacques objected that the State was trying to reduce its burden of proof, but the district court overruled Jacques' objection.

On the second day of voir dire, the State said that the State's burden in a "criminal case is reasonable doubt." Jacques objected again that the State was trying to reduce its

2

burden of proof. The State argued that it had been cut off by Jacques' objection and would have completed its sentence by stating that the burden of proof is beyond a reasonable doubt. The district court warned the State not to misstate its burden of proof. The State then correctly articulated its burden of proof as beyond a reasonable doubt and told the jurors that reasonable doubt does not mean beyond all doubt.

During Jacques' trial, Salamanca was called to testify about his conversation with Jacques. The State asked Salamanca if Jacques mentioned anything about the drug laws. Jacques objected on the grounds of relevance. The district court overruled Jacques' objection but failed to clearly articulate why. As a result, Salamanca testified that Jacques had said that he did not agree with the drug laws and thought they were selectively enforced.

During the jury instruction conference, Jacques objected to the pattern jury instruction regarding the burden of proof and requested that the term "beyond a reasonable doubt" be added to it. The district court overruled that objection, stating that the Kansas Supreme Court had approved the instruction in *State v. Gallegos*, 286 Kan. 869, 190 P.3d 226 (2008).

The jury found Jacques guilty as charged. The district court sentenced Jacques to 12 months of probation with an underlying 28-month prison term. Jacques has timely appealed.

*Did the State commit prosecutorial error by misstating the burden of proof?*

Jacques first argues that the State committed prosecutorial error by misstating the law during voir dire. Jacques contends that the State erred by defining the burden of proof as "reasonable doubt" and by explaining that reasonable doubt is not "100 percent." Jacques also argues that the State erred by telling the jury that reasonable doubt has a

3

common meaning and that each juror "may have a different understanding of what reasonable doubt entailed." Jacques asserts that the State has the burden of proving that the errors complained of had no effect on the proceedings and that the State cannot meet this burden.

"'The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment.' [Citations omitted.]" *State v. Sherman*, 305 Kan. 88, 98, 378 P.3d 1060 (2016). To determine whether a criminal defendant has been denied the right to a fair trial, we use the prosecutorial error analysis. See 305 Kan. at 107. Appellate courts review claims of prosecutorial error by determining if the prosecutor erred and if the criminal defendant suffered prejudice because of the error. 305 Kan. at 109. Prosecutorial error occurs when the "prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial." 305 Kan. at 109.

When analyzing constitutional prosecutorial error, we use the traditional constitutional harmlessness inquiry to evaluate the criminal defendant's prejudice. *Sherman*, 305 Kan. at 109. Under this inquiry, prosecutorial error is harmless if the State demonstrates beyond a reasonable doubt that the error did not affect the outcome of the trial. 305 Kan. at 109. Stated differently, a constitutional prosecutorial error is harmless if "'there is no reasonable possibility that the error contributed to the verdict.' [Citations omitted.]" 305 Kan. at 109. "The focus of the inquiry is on the impact of the error on the verdict. While the strength of the evidence against the defendant may secondarily impact this analysis one way or the other, it must not become the primary focus of the inquiry." 305 Kan. at 111.

"It is improper for the prosecutor to attempt to shift the burden of proof to the defendant or to misstate the legal standard of the burden of proof." *State v. Stone*, 291

Kan. 13, 18, 237 P.3d 1229 (2010). "In all criminal proceedings, the state has the burden to prove beyond a reasonable doubt that a defendant is guilty of a crime." K.S.A. 2016 Supp. 21-5108(a). We are not convinced that the State committed prosecutorial error here. Twice during voir dire the State omitted the word "beyond" when stating its burden of proof. But when the matter was brought to its attention, the State corrected its language and thereafter properly stated the burden of proof. This conduct falls within the wide latitude afforded a prosecutor to conduct the State's case.

But even if we had found error, any error was harmless. The State has shown the statements had no impact on the verdict. The statements occurred during voir dire, when the State was questioning potential jurors before any evidence was taken. Jacques concedes that the jury was properly instructed on the burden of proof by the district court. And the record shows that the district court correctly instructed the jury on the burden of proof and that the State acknowledged the correct burden both during voir dire and in closing arguments. Accordingly, the impact of the error on the verdict is minimal or none. Furthermore, Jacques does not challenge the sufficiency of the evidence and never contested that he admitted to using drugs or that drugs and paraphernalia were found at his residence. Therefore, we find any error harmless. See *Sherman*, 305 Kan. at 111.

*Did the district court err by failing to modify the pattern jury instruction?*

Jacques next contends that the State's misstatement of the burden of proof warranted a modified jury instruction. Jacques argues that the district court erred by failing to modify the pattern burden of proof jury instruction to read: "'[Y]ou must presume that [Jacques] is not guilty, unless you are convinced from the evidence that [Jacques] is guilty *beyond a reasonable doubt*.'" Jacques asserts that the State's misstatements could have confused the jury and that the State cannot prove beyond a reasonable doubt that the district court's failure to issue a modified instruction was harmless error. We disagree.

5

A recent Kansas Supreme Court opinion sets forth the three-step process we use to review jury instruction issues: "'(1) [Determine] whether the appellate court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) [consider] the merits to determine whether error occurred; and (3) [assess] whether the error requires reversal.' [Citation omitted.]" *State v. McDaniel*, 306 Kan. __, 395 P.3d 429, 445 (2017) When considering whether a jury instruction denied a defendant a fair trial, we apply the constitutional harmless error test. See *State v. Williams*, 299 Kan. 1039, 1043, 329 P.3d 420 (2014) (citing *State v. Ward*, 292 Kan. 541, 256 P.3d 801 [2011]).

Generally, a party may not challenge a jury instruction on appeal unless the party objects to the instruction before the jury considers its verdict. However, a jury instruction may always be challenged on appeal if the instruction was clearly erroneous. See K.S.A. 2016 Supp. 22-3414(3). "'At the second step, [the court] consider[s] whether the instruction was legally and factually appropriate, employing an unlimited review of the entire record.' [Citations omitted.]" *McDaniel*, 395 P.3d at 445. "To be legally appropriate, 'an instruction must always fairly and accurately state the applicable law, and an instruction that does not do so would be legally infirm.' [Citation omitted.]" 395 P.3d at 446. District courts should modify pattern jury instructions if the facts of the case require modification. However, if it is unnecessary to modify a jury instruction, the district court should follow the pattern jury instructions. 395 P.3d at 446.

Jacques preserved this issue for appeal by objecting to the jury instruction at trial. As a result, we have jurisdiction to consider Jacques' claim. See *McDaniel*, 395 P.3d at 445.

Jacques challenges the following jury instruction:

6

"The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty.

"The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find the defendant guilty."

This jury instruction is based on K.S.A. 2016 Supp. 21-5108, which states:

"(a) In all criminal proceedings, the state has the burden to prove beyond a reasonable doubt that a defendant is guilty of a crime. This standard requires the prosecution to prove beyond a reasonable doubt each required element of a crime.

"(b) A defendant is presumed to be innocent until proven guilty. When there is a reasonable doubt as to which of two or more degrees of a crime the defendant is guilty, the defendant shall be convicted of the lowest degree only. When there is a reasonable doubt as to a defendant's guilt, the defendant shall be found not guilty."

Although the jury instruction as given does not use the word "beyond," it accurately states the burden of proof required by the statute. Like the jury instruction at issue, K.S.A. 2016 Supp. 21-5108(b) does not use the word "beyond" and uses the term "reasonable doubt" when discussing degrees of a crime. The jury instruction given by the district court accurately states the law because it placed the burden of proof on the State, directed the jury to presume that Jacques was innocent, and instructed the jury to find Jacques not guilty if it had a reasonable doubt as to his guilt. This, coupled with the lack of prejudice to the defendant from the prosecutor's statement of the burden of proof during voir dire, leads us to find no error in the district court's refusal to modify the jury instruction.

*Did the district court err by permitting the State to elicit testimony regarding Jaques'*
*opinion of Kansas drug law?*

Jacques contends that the district court erred by allowing the State to elicit testimony about his negative attitude towards Kansas drug laws. Salamanca testified that after Jacques was arrested, Jacques had said he did not agree with the laws of the government and felt like it had picked the laws it wanted to enforce. Jacques argues that his opinion of Kansas drug laws was irrelevant because it had no tendency to prove or disprove whether he committed the crimes charged. Jacques contends he was prejudiced because the State intended to "paint a negative picture of [him] as an individual who did not respect the law."

We leave for another day the determination whether such opinion evidence is relevant and admissible. Instead, we decide only that, in this case, any error has been shown to be harmless because the testimony at issue did not affect the outcome of the trial. If, as Jacques contends, his opinion of the drug laws was irrelevant to any issues in the case, he is hard pressed to show that this evidence had any effect on the jury's decision. He contends that the evidence broadly painted him as a lawbreaker; but, in fact, the evidence does not show that he breaks the law and merely shows his political view that he disagrees with the law and believes it is selectively enforced—a view that may or may not have been shared by the jurors. To suggest that the evidence portrayed him as a criminal is inaccurate and speculative. Instead, the State presented overwhelming evidence of Jacques' guilt, including his admission to smoking methamphetamine and his taking responsibility for the incriminating items of drug paraphernalia found at his residence. Because there is no reasonable probability that the evidence of Jacques' general opinion affected the outcome of his trial, the district court's error, if any, was harmless.

*Should this court reverse the district court based on the doctrine of cumulative error?*

Jacques argues that he deserves a new trial based on the doctrine of cumulative error, asserting that the State's misstatement of the burden of proof, the district court's failure to issue a modified jury instruction, and the admission of irrelevant but prejudicial testimony constitute a denial of his right to a fair trial when aggregated. But we have found, at most, only one error, so the doctrine of cumulative error is inapplicable. See *State v. Ellmaker*, 289 Kan. 1132, 1156-57, 221 P.3d 1105 (2009). Jacques was given a fair trial.

Affirmed.